## 29662. CHENAULT v. THE STATE.

UNDERCOFLER, Presiding Justice.

This case is before this court by appeal and for mandatory review of the death sentences imposed upon the appellant following his trial by jury. The appellant, Marcus Wayne Chenault, was indicted on July 9, 1974, by a Fulton County Grand Jury for the murders of Mrs. Alberta King and Deacon Edward Boykin, for aggravated assault for the shooting of Mrs. Jimmie Mitchell, for carrying a pistol without a license and for carrying a concealed weapon all on June 30, 1974. Following a jury trial which began on September 9, 1974, the jury found the appellant guilty on all charges on September 12, 1974, and imposed sentences of death on both counts of murder and ten years in the penitentiary for aggravated assault to run consecutively with the death sentences. The trial judge sentenced the appellant to one year in the penitentiary on both misdemeanor pistol counts, to run concurrently with all other sentences imposed.

### I. Factual Situation.

The state presented evidence to establish the following: About 7:30 a.m. on the morning of June 30, 1974, a taxicab driver picked up Marcus Wayne Chenault, the appellant, at the bus station in Atlanta, Georgia. He asked to be taken to the Ebenezer Baptist

Church. He was taken to the church. Chenault asked whether or not Mr. and Mrs. King, mother and father of the late Dr. Martin Luther King, attended Ebenezer Baptist Church every Sunday.

Later that morning, around 9:30 a.m., another taxicab picked up the appellant at a motel and took him to the church.

Appellant was observed seated alone in the main audience section of the Ebenezer Baptist Church and was invited to attend the Men's Adult Bible Class of the Sunday School. He introduced himself and stated he was from Ohio. Appellant was later observed seated in the "Amen" corner next to the organ after church services had begun. Appellant was seated about four feet from the organ. An usher handed the appellant a bulletin and exchanged greetings.

During the worship service a sound resembling an explosion was heard. Mr. Smith, an usher, had his attention drawn in the direction of the organ. He heard one of the victims, Mrs. Alberta King, exclaim, "Oh!" Appellant was observed standing up with a pistol exclaiming, "I am taking over this . . ." He was close enough to Mrs. King to touch her. He was also firing more shots. Mrs. Jimmie Mitchell was near the appellant when the shooting began. Earlier appellant had asked whether or not "Pastor King" was in church, and Mrs. Mitchell pointed Reverend King out. A few minutes later, Mrs. Mitchell heard the explosion-like noise. She was also shot.

Derek Barber King, grandson of Mrs. Alberta King, was sitting near his grandmother. While the organist, Mrs. King, was leading the congregation in the singing, the appellant began shooting with two pistols. Mr. King observed his grandmother being shot, screaming, and bleeding. He saw the appellant shoot his grandmother again after she had fallen on the floor. He observed the appellant shoot Deacon Edward Boykin, and randomly shoot into the congregation.

Other witnesses testified substantially the same.

The appellant presented evidence to support a defense of insanity.

Two psychiatrists testified that they diagnosed appellant as a schizophrenic, paranoid type mental

condition, who was suffering from "delusions of grandiosity." Psychiatric testimony comprised appellant's sole defense.

## II. Enumerations of Error.

1. Appellant's first enumeration of error is that "the Court erred after the plea of insanity was filed to have impaneled a trial jury, without first impaneling a special jury."

Related enumerations of error 3, 6, and 9 will also be resolved by our resolution of the first enumeration.

Appellant filed a "motion to stay the indictment" for the purpose of presenting evidence of the appellant's sanity to the grand jury before the grand jury returned an indictment of the appellant. Appellant sought psychiatric examination by a competent physician and named the psychiatrist to perform the examination in his proposed order. The trial judge interpreted the "motion to stay" as a premature plea of insanity and properly rejected it under Code § 27-1501 providing for special pleas and demurrers after an indictment is rendered. Appellant's motion for psychiatric evaluation was granted.

After indictment, appellant filed no special plea of insanity. In the absence of a special plea of insanity the trial court did more than was required by appointing psychiatrists for evaluation of the defendant. *Cardin v. Harmon,* 217 Ga. 737 (124 SE2d 638); *Taylor v. State,* 229 Ga. 536 (1) (192 SE2d 249); *Coffee v. State,* 230 Ga. 123 (1) (195 SE2d 897); *Brinks v. State,* 232 Ga. 13 (1) (205 SE2d 247); Code Ann. § 27-1502.

Appellant's plea of not guilty by reason of insanity raised only the general issue of the guilt of appellant including his sanity at the time of the acts charged as crimes. *Abrams v. State,* 223 Ga. 216, 226 (154 SE2d 443). That determination was submitted to the jury under proper instructions.

We note that although the mental condition of the appellant was the principal matter relied on by the defense, the psychiatric experts, one of whom was requested by the defense, testified as follows:

Dr. Lloyd T. Baccus, Assistant Professor of Psychiatry and Director of the Law and Psychiatric Service for Grady Hospital, testified that between July 9,

1974, and July 26, 1974, he examined the appellant five times for a total of seven hours. He also interviewed the appellant's parents for approximately four hours.

Dr. Baccus diagnosed the appellant as having a schizophrenic mental condition, paranoid type. He was said to suffer from "delusions of grandiosity." Appellant never indicated that he was "controlled by any forces." The prognosis for the appellant was deemed "good"; meaning that with treatment, the appellant has the capacity to function adequately in society. He testified that there are many people in society that might be classified as paranoid schizophrenics. Dr. Baccus asserted that the appellant in murdering Mrs. Alberta King and Deacon Edward Boykin, had both a cognitive awareness of, and an ability to appreciate the implications of his act. He knew right from wrong. The doctor did not indicate any delusion that compelled the appellant to commit murder. Dr. Baccus also testified that the appellant was competent to stand trial, that he knew what a prosecutor was, what a judge was, what a defense lawyer was, what a trial was and what the consequences were.

Dr. Dewitt Clinton Alfred, Chief Psychiatrist at Grady Hospital and Associate Professor of Psychiatry at Emory University also testified in regard to the sanity of the appellant. Although he examined the appellant on only one occasion, he had, in order to supplement his report, all the data comprising Dr. Baccus' examination. After defining the difference between a psychosis such as paranoid schizophrenia, and psychotic symptoms which might control and compel a given individual, the doctor classified the appellant as a schizophrenic-paranoid type; i. e., a person having a psychosis. Dr. Alfred also stated that in his opinion, the appellant did not suffer at the time of the crime, under such psychotic symptoms as would render him helpless and lacking in control of himself from delusions and hallucinations. Dr. Alfred's report, read into evidence indicated that appellant: "(a) was suffering from a condition known as paranoid schizophrenia; (b) but was sufficiently free of mental defect, disease, or derangement as to be able to distinguish right from wrong; (c) was sufficiently free from mental defect . . . as to be able to adhere to the right; (d) was not deprived of

sufficient will or volition or self-control as to only partially be able to adhere to the right; (e) was not under the influence of an automatic compulsion which he was helpless to control; (f) was able to entertain the requisite intent, willfulness in planning, to commit the alleged offense." In Dr. Alfred's opinion at the time of examination, the appellant was so far free from mental defect, disease or derangement as to be able to, (a) understand the nature of the charges pending against him; (b) understand the role of the various key participants in the courtroom drama, in other words: judge, jury, prosecuting attorney, defense attorney; and (c) intelligently cooperate and participate with the defense attorney adequately and sufficiently in his own defense.

The court did not err as alleged in Enumerations 1, 3, 6, and 9.

2. In Enumeration 2 appellant alleges the court erred in allowing the district attorney to orally argue against defendant's pre-trial motions without first filing a written answer.

The defendant shows no injury from the trial court's allowing the state to argue orally on the appellant's discovery motions without responding in writing. In *Bateman v. Bateman,* 224 Ga. 20, 21 (159 SE2d 387) we said, "Harm as well as error must be shown to authorize a reversal by this court. As was held in *Brown v. City of Atlanta,* 66 Ga. 71, 76: 'When a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party.' See also *Dill v. State,* 222 Ga. 793 (152 SE2d 741), and citations." Also cited in *Robinson v. State,* 229 Ga. 14 (189 SE2d 53). No harmful error is shown by this enumeration of error.

3. It was not error for the trial court to deny appellant's motions for discovery and for a daily transcript as alleged in Enumerations 8, 10, 11, and 12.

Appellant's motion for discovery consisted of a "motion to require furnishing of investigative reports or in the alternative issuance of subpoena for production of documentary evidence," a motion to produce an abstract

of evidence (which formed the basis for the finding of probable cause at the commitment hearing) and motions for a bill of particulars and for favorable testimony from the grand jury. Appellant has not shown how his case might be helped or materially prejudiced by specific evidence in the hands of the state.

There is no Georgia statute or rule of practice which allows discovery in criminal cases. See *Pass v. State,* 227 Ga. 730 (12) (182 SE2d 779).

Appellant relies on Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215). In *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) we held: ". . . Brady does not require the prosecution to open its file for general inspection by the defense or for pre-trial discovery. See also United States v. Moore, 439 F2d 1107 (6th Cir. 1971) . . . The appellant has the burden of showing how his case has been materially prejudiced, even when the trial court declines to make an in camera inspection. See United States v. Harris, 458 F2d 670, 677 (5th Cir. 1972)." See also *Whitlock v. State,* 230 Ga. 700 (3) (198 SE2d 865), *Clark v. State,* 230 Ga. 880 (1) (199 SE2d 786), and *Wanzer v. State,* 232 Ga. 523 (8) (207 SE2d 466).

There is no requirement that an appellant be furnished with an abstract of any evidence at a committal hearing (*Brown v. State,* 223 Ga. 76 (9) (153 SE2d 709)) or a transcript of the evidence taken in a hearing by a court of inquiry. *Cummings v. State,* 226 Ga. 46, 47 (1) (172 SE2d 395).

Neither Georgia statutes nor decisions require furnishing an appellant with a daily transcript of the proceedings in a criminal case. This view is in accord with the weight of authority in this country, 23 CJS 868, § 966 (citing Leyvas v. United States, 264 F2d 272). The court stated in the order denying defendant's request for a daily transcript that an exception would be considered as to the testimony of any particular witness.

These enumerations are without merit.

4. Appellant's fourth enumeration of error is that the court erred in denying his motion for a continuance.

Where, as here, it appears that counsel was appointed sixty days before trial, given access to the entire prosecution file almost a month before trial, knew

the examining psychiatrist two months before the trial, and was furnished the psychiatric report prior to trial, the trial court did not err in denying a motion for continuance in the absence of a showing of diligence on the part of counsel or specific actions that remained to be taken. *Starr v. State,* 209 Ga. 258 (1) (71 SE2d 654); *Cochran v. State,* 212 Ga. 245 (91 SE2d 601); *Anderson v. State,* 222 Ga. 561 (2) (150 SE2d 638); *Morgan v. State,* 224 Ga. 604 (163 SE2d 690); *Beeks v. State,* 225 Ga. 200 (1) (167 SE2d 156); *Campbell v. State,* 231 Ga. 69, 74 (200 SE2d 690); *Hicks v. State,* 232 Ga. 393, 399, supra.

5. Appellant alleges in Enumeration 5 that the court erred in not granting a change of venue.

No abuse of discretion by the trial judge in denying a change of venue is shown where, although one of the victims is a well-known and highly respected person and substantial publicity surrounded the offense, persons familiar with general attitudes and feelings in the community deny the possibility of a mob setting, the veniremen are carefully questioned to screen out those who have formed such a fixed opinion as to guilt or innocence of the appellant as would not yield readily to the testimony, and the trial forum was marked by judicial decorum evident from the transcript. *Thacker v. State,* 226 Ga. 170, 174 (173 SE2d 186); *McCrary v. State,* 229 Ga. 733, 734 (194 SE2d 480); *Butler v. State,* 231 Ga. 276 (2) (201 SE2d 448).

6. In Enumeration 7 appellant alleges the court erred in overruling the demurrer to the indictment and in Enumeration 14 alleges the court erred in denying appellant's motion to dismiss the indictment, both founded on the same alleged defect in the indictment.

Appellant avers that the indictment alleges both murder and manslaughter by use of the phraseology "kill and murder"; is vague and ambiguous; and does not apprise the appellant of the charges against him with sufficient clarity to permit him to adequately prepare his defense.

Code § 27-701 provides in part: "Every indictment . . . shall be deemed sufficiently technical and correct, which states the offense . . . so plainly that the nature of the offense charged may easily be understood by the jury. . ."

Both murder counts are in the following form: ". . . charge and accuse Marcus Wayne Chenault with the offense of murder, for that said accused, in the County of Fulton, State of Georgia, on the 30th day of June, 1974, did unlawfully and with malice aforethought, kill and murder one . . . a human being, by shooting . . . with a pistol; contrary to the laws of said State, the good order, peace and dignity thereof."

The Georgia Criminal Code provides in pertinent part, Code Ann. § 26-1101: "Murder. (a) A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." Ga. L. 1968, pp. 1249, 1276.

Not only does the indictment state that the charge is murder but we are satisfied that either to kill or murder satisfies the statutory requirement of "causes the death," is not vague and ambiguous, apprises the defendant of the charges against him with sufficient clarity to permit him to adequately prepare his defense and is sufficiently technical and correct — so plainly that the nature of the offense charged could easily be understood by the jury.

The law of this state does not require expression of a charge contained in an indictment, in the verbatim language of the statute. *Clemon v. State,* 218 Ga. 755 (2) (130 SE2d 745); *Moore v. Caldwell,* 231 Ga. 485 (2) (202 SE2d 425).

Enumerations 7 and 14 are without merit.

7. In Enumeration 13, appellant alleges, "The Court erred in allowing the district attorney to make improper arguments and prejudicial statements in his closing and sentencing arguments."

After the argument on sentence by the prosecutor wherein the statement complained of was concluded, the appellant's counsel had argued, the court had charged the jury as to sentencing, the court had recessed for lunch, after which the court on its own motion, gave a brief additional charge, and the jury had retired to consider the sentence, appellant's counsel entered the following objection:

"Your Honor, at this time I'd like to make a formal objection to the argument of the prosecutor . . . alluding to Georgia, Fulton County, perhaps, being a mockery in the

eyes of the nation or international community based on his closing argument as to punishment for the accused. His statements, I think, were inflammatory and prejudicial."

No other objection concerning improper and prejudicial statements were made. The statements alluded to as stated in appellant's brief were: "The whole world must know how we deal with murderers who come into our county for the express purpose of assassination. This county cannot afford the publicity . . ." and, "We can't have these reporters writing[that a] life sentence is all you get in this county. . ."

The state argues that the objection was neither timely nor meritorious.

In *Prevatte v. State,* 233 Ga. 929, 931, we ruled in similar circumstances that "We will rule upon this contention even though there was no objection in the trial court, because under the mandate of the death penalty procedure (Code Ann. § 27-2537 (c1)) this court must determine 'whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.' "

A prosecutor may argue for a death sentence and offer plausible reasons for his position. *Allen v. State,* 187 Ga. 178, 182 (200 SE 109); *Strickland v. State,* 209 Ga. 675 (2) (75 SE2d 6).

The remarks objected to in the motion were not made during the first phase of the trial, that in which the jury was to pass upon the defendant's guilt or innocence, but were made during the sentencing portion of the trial. The district attorney may urge severe punishment. *Bailey v. State,* 153 Ga. 413 (4) (112 SE 453); *Hamilton v. State,* 131 Ga. App. 69 (70) (205 SE2d 24). Although such statements may have been objectionable if made during the guilt determining stage, protection of the community is one consideration a jury is entitled to entertain in determining an appropriate sentence.

Enumeration 13 is without merit.

8. Appellant's final enumeration is: "Since the district attorney did not submit any aggravating circumstances in evidence during the second, sentence stage of the trial, the sentence of death is invalid."

We addressed this issue in *Eberheart v. State,* 232 Ga. 247, 252 (206 SE2d 12) where, as here, the prosecuting attorney offered no aggravating matter in the pre-sentence hearing. In *Eberheart* (p. 253), we held: "The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or innocence."

This enumeration is without merit.

### III. Sentence Review.

The death penalty in this case must conform to the standards set out in Code Ann. § 27-2534.1, if it is to pass the test of constitutionality. Ga. L. 1973, pp. 159, 163. Additionally, this court must determine whether the sentences of death have been imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3) (Ga. L. 1973, pp. 159, 165).

In accord with the statute, we have reviewed the trial transcript and record, including the evidence, and we have made a comparison with sentences in similar cases. The similar cases considered by the court in reviewing this case are listed in an appendix attached to this opinion.

We conclude that the sentences of death imposed here were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty as to both counts of murder, the jury found as follows: "The offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or a device which would normally be hazardous to the lives of more than one person." Code Ann. § 27-2534.1 (b) (3).

In our view, the evidence supports the jury's findings

of statutory aggravating circumstances as to the two counts of murder. After considering both the crimes and the defendant and after comparing the evidence and the sentences in this case with those of previous murder cases, we are also of the opinion that these two sentences of death are not excessive or disproportionate to the penalties imposed in similar cases which are hereto attached.

The two death sentences for the offenses of murder are affirmed.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially in Division 1, and Gunter, J., who dissents.*

ARGUED FEBRUARY 11, 1975 — DECIDED APRIL 9, 1975 — REHEARING DENIED APRIL 22, 1975.

*Randy Bacote,* for appellant.

*Lewis R. Slaton, District Attorney, Carter Goode, Assistant District Attorney, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr., Assistant Attorney General,* for appellee.

HALL, Justice, concurring specially.

I concur specially in Division 1 because it appears to hold that Chenault waived his right to contest his sanity to stand trial through failure to move under Code § 27-1502 for a special jury at precisely the proper time. I feel that under the example of Pate v. Robinson, 383 U. S. 375, we should be reluctant in most circumstances to rule that one whose competence is in question competently waived the right to have the issue of his competence determined[1]; and that we should be particularly reluctant so to rule where the alleged waiver resulted from a technical error in timing. Instead, and without reaching the question whether the trial court should have treated

---

[1] "The state insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently

the premature motion as revived when the proper time came, that is, after indictment, so that a special jury should then have been impaneled, I would prefer to rule that any error which might have been committed in connection with the court's not impaneling a special jury to determine Chenault's competence for trial was harmless, in light of the fact that at trial there was a full development of this issue, including the testimony of two defense psychiatrists, and there was simply no evidence whatever that Chenault was incompetent to stand trial. Dr. Lloyd Baccus, a psychiatrist, testified for the defense that Chenault had been and remained a paranoid schizophrenic; but on cross examination he specifically stated that his examination had found Chenault competent to stand trial. Dr. D. C. Alfred, also a psychiatrist and the only other witness for the defense, testified to the same conclusions. There was simply no medical opinion evidence in this case suggesting that Chenault was incompetent to stand trial, nor had the defense been hampered in any way in obtaining or presenting such evidence had it been available. This, for me, completely distinguishes Pate v. Robinson, where the conviction was reversed because in that case four defense witnesses testified that Robinson was insane but the state was never required to respond in any substantial way. Thus, Robinson was convicted and sentenced though there had not at any time been a meaningful hearing on his mental condition. Chenault has suffered no such denial of rights.

APPENDIX.

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99);

'waive' his right to have the court determine his capacity to stand trial. See Taylor v. United States, 282 F2d 16, 23 (C. A. 8th Cir., 1960.)" Pate v. Robinson, 383 U. S. 375, 384.

*Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810).