## 64402. BERRY v. THE STATE.

QUILLIAN, Chief Judge.

Special Agent Gerald D. Chapman of the Federal Drug Enforcement Administration (DEA) was on duty at the Atlanta International Airport on July 10, 1981. DEA agents use a "drug courier profile" technique in an attempt to identify potential drug couriers arriving in Atlanta from areas where drugs are imported into the United States — such as Miami or South Florida. Agent Chapman has participated in approximately 225 to 250 drug related arrests at the Atlanta airport while on duty there. Using the "drug courier profile" technique while monitoring a flight from Fort Lauderdale to Atlanta, Chapman observed the defendant deplane approximately thirty seconds after all other passengers had departed. From past experience, Chapman attached special significance to this fact as it permitted that person to pick out people in front of him that may be watching the passengers. It also increased the chance that police watching deplaning passengers would have departed. The defendant had a "prominent bulge" in the lower abdominal area, below the belt, that was not consistent with the rest of his body. He also wore his shirt outside his pants to cover the waist area and carried a garment bag in front of this body to cover the abdominal area. From past experience, Chapman knew that drug

couriers usually carried drugs strapped to their body or legs. Defendant turned in his ticket folio to the Delta ticket agent and received a ticket to Detroit. Chapman examined defendant's surrendered ticket folio which showed a one-way ticket from Fort Lauderdale, paid for in cash, which did not contain additional baggage checks. The flight reservation showed defendant was flying under the name of James Barnette and gave a telephone call-back number. Chapman called the number listed and no one at that number knew James Barnette nor had anyone at that number made a reservation for a flight to Detroit. At that point, Chapman decided to interview the defendant.

Agent Chapman was dressed in "plain clothes" and was armed, but his weapon was not visible. Chapman approached the defendant and showed him his DEA credentials and identified himself as a Federal DEA agent and asked if he could talk with him. Chapman asked for the purpose of defendant's trip to Florida. Berry stated it was to visit a friend. Chapman asked if his name was James Barnette and if he had any identification. Defendant stated his name was Barnette and he did not have any identification — he had left his wallet and keys in Florida. The defendant "was very nervous . . . voice was trembling in his answers, his hands were visibly shaking . . . physically perspiring . . . his breathing was shallow and rapid . . ."

Agent Chapman had received special training in drug identification and is familiar with cocaine hydrochloride. Chapman also has a degree in chemistry and is familiar with the appearance, texture, and "peculiar odor" that is easily identifiable with cocaine hydrochloride. Hydrochloric acid is used to process cocaine and heroin and the higher the purity of the drug, the stronger the acid and more prominent the odor. While Chapman was questioning Berry he detected and recognized the odor he "has smelled in the past associated with narcotics, either the heroin or the cocaine . . . Because in both processes . . . the cocaine and heroin they used both of the same type of acids in the process which is hydrochloric acid . . . And having been a chemistry major and also hav[ing] a degree in chemistry [Chapman] associated that odor with the process of either one of those two drugs. Q. Is it a pronounced distinct odor? A. Yes, it is."

Chapman asked for permission to search the defendant and his garment bag. Berry at first consented, stating he didn't have a choice. Chapman advised him he did not have to consent to the search and Berry withdrew his consent. After Chapman went through the same routine again — Berry left it up to Chapman to decide. Chapman asked the defendant to accompany him to the Delta office and there asked defendant to empty his pockets and luggage. Finally, he asked

defendant to explain the bulge around his lower abdomen. Berry said "his back was out" and it was a waistband. Chapman asked him to remove the waistband and then Chapman removed a large packet of cocaine — 145.7 grams.

The trial court found: 1) defendant had not been seized when the DEA agents stopped and questioned him initially about his name, purpose of his trip to Florida, etc., 2) that defendant voluntarily accompanied the DEA agents to the room to be searched, 3) that defendant tacitly consented to the search, and 4) that the officer had probable cause to believe that a crime was being committed in his presence and had probable cause to arrest the defendant and conduct a search pursuant to that arrest. Defendant appeals his conviction. *Held:*

1. Pretermitting the issue of whether the defendant consented to the search, we find sufficient probable cause for the arrest of the defendant and a search incident to that arrest.

Our Supreme Court, in *Vaughn v. State,* 247 Ga. 136, 138 (274 SE2d 479) "reiterated the applicability of the constitutional standard of Beck v. Ohio," 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964) for a lawful arrest without warrant, i.e. ". . . whether at that moment the facts and circumstances within [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Id. at 137. "The 'probable-cause' requirements for a search without a warrant are the same requirements necessary for the issuance of a warrant by a magistrate. And these requirements are that the judicial officer issuing such a warrant must be supplied with sufficient information to support an independent judgment that probable cause exists for the issuance of the warrant. See Whiteley v. Warden, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1971)." *Morgan v. Kiff,* 230 Ga. 277, 280 (196 SE2d 445). " ' "In dealing with probable cause . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." Brinegar v. United States, 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879). There is also a great "difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." Draper v. United States, 358 U. S. 307, 311-312 (79 SC 329, 3 LE2d 327). As Judge Learned Hand said in United States v. Heitner, 149 F2d 105, 106 (C.A. 2d Cir.): "It is well settled that an arrest may be made upon hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the

powers of peace officers are to be so cut down that they cannot possibly perform their duties." ' " *Sanders v. State,* 235 Ga. 425, 440 (219 SE2d 768), U. S. cert. den. 425 U. S. 976; Accord, *Strauss v. Stynchcombe,* 224 Ga. 859, 865 (165 SE2d 302); *McCorquodale v. State,* 233 Ga. 369, 376 (211 SE2d 577).

"To justify the arrest without warrant, the officer need not see the act which constitutes the crime take place, *if by any of his senses* he has personal knowledge of its commission." (Emphasis supplied.) *Lynn v. State,* 130 Ga. App. 646 (1) (204 SE2d 346). Hence, odor as well as sight, hearing, taste or touch can be used in establishing probable cause. The U. S. Supreme Court has held that "[p]rohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guarantees against unreasonable search." Taylor v. United States, 286 U. S. 1, 6 (52 SC 466, 76 LE 951). In a later decision the Supreme Court broadened this holding. "If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." Johnson v. United States, 333 U. S. 10 (I) (68 SC 367, 92 LE 436).

This Court has generally followed Taylor, supra, rather than Johnson, supra, holding: "Although there is some controversy as to whether or not the odor of burning marijuana by itself supplies sufficient probable cause for a search or an arrest [cits.], all opinions of this court are in agreement that 'it may be considered and may be a part of a totality of circumstances sufficient to validate one.'" *State v. Medders,* 153 Ga. App. 680, 681 (266 SE2d 331). Accord, *Dickson v. State,* 124 Ga. App. 406 (184 SE2d 37); *Rogers v. State,* 131 Ga. App. 136 (3) (205 SE2d 901); *Culpepper v. State,* 132 Ga. App. 733 (1) (209 SE2d 18); *Yawn v. State,* 134 Ga. App. 77 (4) (213 SE2d 178). However, "[p]robable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction." *Cook v. State,* 136 Ga. App. 908, 909 (222 SE2d 656). The totality of the circumstances here, cited above, amply supports the trial court's finding of probable cause to arrest for a crime being committed in the officer's presence — possession of either heroin or cocaine — as both are controlled substances under the Georgia Controlled Substances Act. Code Ann. Chap. 79A-8 (Ga. L. 1974, pp. 221, et seq.). Incident to that lawful arrest, the officer had the right to search contemporaneously the full person of the arrestee. United States v. Robinson, 414 U. S. 218 (94

SC 467, 38 LE2d 427).

2. "Where the formal arrest followed quickly on the heels of the challenged search of [defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." Rawlings v. Kentucky, 448 U. S. 98, 111 (100 SC 2556, 65 LE2d 633).

3. The trial court was correct in finding that defendant's person was not "seized" at the initial encounter when the DEA agents questioned the defendant on the concourse. United States v. Mendenhall, 446 U. S. 544 (II-A) (100 SC 1870, 64 LE2d 497). "Terry v. Ohio, 392 U. S. 1 (1968), establishes that a reasonable investigative stop does not offend the Fourth Amendment. The reasonableness of a stop turns on the facts and circumstances of each case." Id. at 561. Use of the DEA-developed "drug courier profile" provides sufficient articulable and reasonable suspicion to authorize a "Terry-type" stop. Id. at 562-563. "Among the circumstances that can give rise to reasonable suspicion are the agent's knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices. Law enforcement officers may rely on the 'characteristics of the area,' and the behavior of a suspect who appears to be evading police contact. United States v. Brignoni-Ponce, 422 U. S. at 884-885. 'In all situations the officer is entitled to assess the facts in light of his experience.' " Id. at 563. The intrusion was modest. The encounter took place in the public concourse of the airport. The agents wore no uniforms and displayed no weapons. They did not summon the defendant to their presence but approached him and properly identified themselves as federal agents. They requested and did not demand to see defendant's ticket and identification and reason for this trip to Florida. "Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest." United States v. Mendenhall, 446 U. S. 544 at 555, supra. Accord: State v. Reid, 247 Ga. 445, 449 (276 SE2d 617), U.S. cert. den. Hence, where the subsequent acquisition of the knowledge of possession of either heroin or cocaine by the defendant was discovered by detection and identification of the "distinctive odor" of hydrochloric acid by Agent Chapman during this legal "Terry-type" stop, it may properly be considered as being acquired in a spot where he was authorized to be and the defendant was lawfully being questioned concerning the reasonable suspicion raised by use of the "drug courier profile." From the totality of the circumstances and facts then known to Agent Chapman, he had probable cause to believe the defendant was then committing a criminal offense in his presence and was authorized to make an arrest and conduct a search without a warrant. See State v. Misuraca, 157

Ga. App. 361 (276 SE2d 679); *McShan v. State,* 155 Ga. App. 518 (271 SE2d 659). Accordingly, we find no merit in defendant's allegations of error regarding his arrest and search at the Atlanta airport.

4. It is alleged that the trial court improperly restricted cross-examination of the arresting DEA agent. Counsel asked Agent Chapman if he had heard of two cases called United States v. Robinson, in the Northern District of Georgia. The State's objection was sustained. Counsel did not perfect the record by any showing of relevance. He did state that "Agent Chapman must testify today in a fashion that would produce a conviction because he has been held to be engaged in unlawful activity that he may not assert a good faith immunity defense and that he himself can be, if damages are proven, will be held liable to Alphonso Sylvester Robinson . . . ." (See Division 5, post.) Following the ruling sustaining the objection counsel proceeded with examination of the witness. " 'In order to be in a position to complain of the abridgement of the right of cross-examination, a party to a legal proceeding or his counsel must either ask the questions he desires to ask or state to the court what questions he desires to ask and then interpose timely objection to the ruling of the court denying the right to propound the questions.' " *Cross v. State,* 136 Ga. App. 400, 409 (221 SE2d 615); Accord: *Waters v. State,* 80 Ga. App. 104 (3) (55 SE2d 677); *Harmon v. State,* 133 Ga. App. 720 (2) (213 SE2d 23). Counsel in the instant case did neither act required of him. As the scope of cross-examination rests largely within the sound discretion of the judge, we find no merit in this enumeration. *Franklin v. State,* 136 Ga. App. 47, 50 (220 SE2d 60).

5. Defendant's last enumerated error contends the trial court erred in denying his motion for new trial upon newly discovered evidence "bearing upon the credibility of agent Chapman and his activities while on duty at the Atlanta International Hartsfield Airport." The "newly discovered evidence" consisted of an excerpt from a report made by DEA agents on an arrest subsequent to the incident involving the present defendant. In that report, Agent Chapman is reported to have opened a traveler's suitcase and found cocaine therein after the traveler refused to consent to a search. We also note in the same report that Exhibits 2, 3, and 4 — were packages of cocaine seized from the defendant's luggage "pursuant to a search warrant."

Defendant argues that this is "information bearing upon the 'good faith' conduct of Agent Chapman while in the line of duty." Counsel cites United States v. Williams, 622 F2d 830 (5th Cir. 1980) as the legal base for construction of this defense. Williams, supra, is a case in which the Fifth Circuit, sitting en banc, judicially legislated a "good faith" exception to the judicially created "exclusionary rule."

See Stone v. Powell, 428 U. S. 465, 482 (96 SC 3037, 49 LE2d 1067). The Fifth Circuit's creation was apparently fashioned from the "good faith and probable cause" exception from tort liability for a police officer's act in arresting a suspect without a warrant "in good faith" — where the arrestee was subsequently found innocent. See Pierson v. Ray, 386 U. S. 547 (2) (87 SC 1213, 18 LE2d 288); Restatement, Second, Torts 204, § 121; 1 Harper & James, The Law of Torts 275, 277-278, § 3.18.

Assuming, without deciding, that the "good faith" exception to the exclusionary rule would apply to cases arising within Georgia, since the newly discovered evidence relates only to cases other than the present case, it would affect only the credibility of the witness Chapman. Our Supreme Court has set forth six criteria as the basis for new trial on the ground of newly discovered evidence. The sixth criterion is: " ' "[T]hat a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." ' " *Fleming v. State,* 236 Ga. 434, 442 (224 SE2d 15). Hence, the defendant's evidence would not be a recognized basis for a new trial.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 7, 1982—
REHEARING DENIED OCTOBER 4, 1982— ▮▮▮▮▮▮▮▮

*Frank J. Petrella,* for appellant.
*Robert E. Keller, District Attorney, Steven Lister, William L. McKinnon, Jr., Assistant District Attorneys,* for appellee.