70744. GARVEY v. THE STATE.
(335 SE2d 640)

BIRDSONG, Presiding Judge.

Michael Garvey, the defendant, appeals his conviction for the offenses of aggravated assault on a peace officer and possession of cocaine. *Held:*

1. Defendant claims the trial court erred in denying his request to participate in his trial, and requiring him "to elect whether he wanted his appointed counsel to represent him or whether he wanted to represent himself." Counsel informed the court that defendant would like to take an active part in the trial, "in all probability in the opening statement, closing argument, and especially in the cross-ex-

amination of witnesses." The court advised the defendant: "I need you to make an election, however, as to whether you want to represent yourself or whether Mr. Nix [the appointed counsel] is going to represent you." The court and counsel and the defendant engaged in an extensive discussion of what was wanted and what would be permissible. The defendant explained his position: "[A]ll I was asking was an opportunity to cross-examine any witness of my choice, and possibly read [sic] the jury this morning. If that will create a problem I will just withdraw it and continue with it as it is."

The trial court clarified his earlier ruling: "I will go back to the point that we began with, and that is that you have a right to represent yourself and this court will do everything it possibly can to see that you have a fair trial, and that will include allowing you to take part in such portions of the trial as you wish to do so."

"I need you to tell me basically whether you are calling the shots or whether Mr. Nix is calling the shots. All that's going to do is give me someone to talk to primarily." Counsel then asked whether one counsel must question one witness, and the court said this was permissible, but added: "However, I would allow the two of you to confer. Do you understand? MR. GARVEY: Yes Sir. THE COURT: Is that acceptable? MR. GARVEY: Yes, sir. THE COURT: . . . Mr. Nix will be counsel, and because you have a right to represent yourself, I will allow you within limits, but I can't draw the line, but within limits to represent yourself at certain portions of the trial." Counsel then advised the court that the opening and closing statements would be bifurcated between himself and the defendant.

The defendant elected to cross-examine a state witness and was permitted to do so by the court. At the close of the state's case, counsel announced that he and the defendant had discussed their case and "we had reserved our opening statement until the presentation of our defense." The defendant presented no evidence on his behalf and no opening argument was made. The transcript does not indicate who made closing argument. The facts cited above are indicative of the understanding of counsel and defendant that defendant could participate as co-counsel, with the appointed counsel acting as lead counsel. Hence, defendant was not required to elect who was to represent him, but only designate a "lead counsel."

At the outset, we will note a change in the Georgia Constitution of a defendant's right to act as his counsel. In the 1976 Constitution, it was provided that "[n]o person shall be deprived of the right to prosecute or defend his own cause . . . in person, by attorney, *or both*." (Emphasis supplied.) Art. I, Sec. I, Par. IX. However, in the 1983 Constitution, this provision was changed to state: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this

state." Art. I, Sec. I, Par. XII. The transcripts of hearings of the General Assembly on this paragraph show the primary issue debated was whether the "or both" language should be deleted. *Nelms v. Georgian Manor Condo. Assn.*, 253 Ga. 410, 413 (321 SE2d 330).

It has been the law prior to this time that a criminal defendant had a constitutional right of self-representation which arose from the Sixth Amendment. *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562). "However, [in Georgia] a criminal defendant has a separate, state constitutional right of self-representation which derives from Art. I, Sec. I, Par. IX of the Georgia Constitution. . . ." *Burney v. State*, 244 Ga. 33, 36 (257 SE2d 543), U. S. cert. den. 444 U. S. 970. Thus, under our former state constitution, the defendant had the right to both self-representation and appointed counsel. Id. The trial court, however, retained the power to regulate, in its discretion, the manner in which the defendant exercised his right of self-representation. Id.

"The discretion of the trial judge in regulating the conduct of counsel, parties, and the witnesses, and in prescribing the manner in which the business [of the court] shall be conducted, *including the manner in which the prisoner shall exercise his constitutional right of defense in person,* is broad and is ample to enable him in any case to effect the purposes for which it is inherently his; but his discretion is not unlimited, for it must not be abused and it may not be exercised in such a way as to involve a deprivation of right." (Emphasis supplied.) *Loomis v. State*, 78 Ga. App. 153, 163 (51 SE2d 13); see also *Jackson v. State*, 149 Ga. App. 496 (1) (254 SE2d 739).

The record does not support counsel's assertion that defendant was denied the right to participate as co-counsel, or required to elect whether he wanted to defend himself or permit appointed counsel to represent him. See *Powers v. State*, 168 Ga. App. 642 (3) (310 SE2d 260). The election required was to designate lead counsel, and "[t]he trial court can require leading counsel to be appointed and leading counsel can be required to conduct other aspects of the case. . . ." *Burney v. State*, supra, p. 37. We find no error in the procedure followed.

2. Defendant enumerates as error the denial of his request for a change of venue. This motion was based primarily on two grounds: (1) pervasive pre-trial publicity, and (2) the individual alleged to have been shot by the defendant was a member of a prominent family in the county in which he was being tried. Voir dire of the prospective jurors revealed that some of the jurors had read local and Atlanta newspaper accounts of the incident but did not remember the details. None of the jurors selected was of the opinion that his exposure to the newspaper or TV stories about this episode would affect his opinion and all agreed they would abide by the instructions of the court to

base their determination of guilt or innocence on evidence presented in court. It is well settled in Georgia that a motion for a change of venue based on pre-trial publicity surrounding the incident involving the defendant addresses itself to the sound discretion of the trial judge, and his decision will not be disturbed on appeal unless it can be shown there was an abuse of that discretion. *Coleman v. State*, 237 Ga. 84, 90 (226 SE2d 911).

The best test of jury impartiality is shown by examination of prospective jurors on voir dire. *Jarrell v. State*, 234 Ga. 410, 416 (216 SE2d 258). Whether unfavorable pre-trial publicity has prejudiced one accused of a crime is to be judged by a test of whether the juror has formed a fixed opinion as to the guilt or innocence of the accused from reading or hearing unfavorable media publicity. *Dutton v. State*, 228 Ga. 850, 852 (188 SE2d 794). The extensive voir dire here of the prospective jurors showed that those selected had no fixed opinion on the defendant's guilt or innocence. *Allen v. State*, 235 Ga. 709, 713 (221 SE2d 405).

In *Chenault v. State*, 234 Ga. 216, 222 (215 SE2d 223), our Supreme Court found no abuse of discretion in the trial court's refusal to change venue where the victim, Mrs. Martin Luther King, Sr., was a well-known and highly respected person and substantial publicity had surrounded the offense. We also find no abuse of discretion in the refusal of the trial court to change the venue of the trial.

3. On September 12, 1983, defendant's appointed counsel moved for a continuance on the basis that he was unprepared. This case was originally scheduled to be tried on August 15 but the attorney from Miami, Florida, whom defendant had retained to represent him, did not appear. Defendant was given two weeks to prepare for trial and the public defender was asked to monitor the case and assist Garvey in retaining counsel. The public defender went to the Rockdale County jail and spoke to defendant on August 19. On September 2, counsel had some personal problems which required that he leave the state over a weekend. He became ill and finally returned to his office on September 8. He stated that he was unable to work on this particular case until the weekend prior to the hearing on the motions. Hearing was held on September 12 on motions he had filed. Counsel received a list of the state's witnesses from the prosecutor on Friday, September 9, but did not interview any of them before the hearing on Monday, September 12. The court granted a one-day continuance and trial commenced on September 13. Voir dire consumed the first day and the jury was impaneled on September 14.

We can empathize with the position of the public defender, but this empathy does not detract from an appreciation of the problems facing the trial court in scheduling cases and jury panels, and the prosecution's dilemma of assembling evidence and witnesses and ar-

ranging his trial schedule. Trial judges necessarily require a great deal of latitude in scheduling trials and granting continuances (*Ealy v. State*, 251 Ga. 426 (3) (306 SE2d 275)) and the grant or denial of a motion for a continuance is left to the sound discretion of the trial court. OCGA § 17-8-22; *Collier v. State*, 244 Ga. 553, 558 (261 SE2d 364). A refusal to grant a continuance should not be disturbed by an appellate court unless it clearly appears that the judge abused his discretion. *Marshall v. State*, 239 Ga. 101 (1) (236 SE2d 58). No abuse of discretion is shown. *Wiley v. State*, 250 Ga. 343 (3) (296 SE2d 714).

4. The court questioned defendant as to his desires on representation. He responded that he would like to retain counsel but the state had confiscated $800 in cash and two rings when he was arrested and they refused to return his property. He had received $2,000 in cash when he sold a boat but lawyers wanted $3,500 "up front" before they would accept his case. Garvey contended the state was hindering his hiring an attorney. The prosecutor stated that the rings were the subject of a civil lawsuit, because "there is a five million dollar damage suit filed against Mr. Garvey, and I felt that it would have been improper for me to order their release or return at this juncture in light of that fact. That was the reason that those rings were not returned." The trial court questioned whether there was any legal authority to withhold the personal property of a confined accused on the basis he was facing a civil lawsuit. The prosecutor was of the opinion that the cash tended to show, and was evidence of, a drug transaction because it was a large amount of cash. The state amended its position to claim that the rings "tend to show the lifestyle somewhat of the defendant . . . and probably would be introduced in the trial of the drug transaction case especially, if not in the possession and aggravated assault case." Defendant estimated the value of the rings between $800 and $1,500. Garvey argued that he had papers to show he had taken out a bank loan on February 23 for $2,000 and the state had no evidence to show that his confiscated cash was drug money. The court reserved its ruling and the cash and rings were not returned, nor were they introduced into evidence in this case. Garvey was defended by the public defender.

We are unaware of any authority for the state to retain a confined suspect's personal property on the possibility that a civil lawsuit filed by a victim against the suspect will be successful. The problem is particularly vexing because the victim in this case is the chief of police. Despite the change of reason for retention of the defendant's property by the state, we will accept the prosecutor's original reason for the basis of this opinion — the defendant's property was being held because the chief of police had a tort action pending against him.

The evidence presented in this case established probable cause for the prosecutor to believe that the defendant was involved in drug

transactions. Some of the characteristics of the DEA developed "drug-courier profile" are that drug dealers pay for transportation tickets with cash (*Berry v. State*, 163 Ga. App. 705, 706 (294 SE2d 562)), and they carry large amounts of cash. *Rasnake v. State*, 164 Ga. App. 765, 766 (298 SE2d 42), U. S. cert. den. 103 SC 3114. Further, our code authorizes forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value, furnished or intended to be furnished by any person in exchange for a controlled substance or marijuana in violation of this chapter, all proceeds traceable to such an exchange, all moneys . . . or other things of value used to facilitate any violation of this chapter. . . ." OCGA § 16-13-49 (a) (6). Hence, we do not find it unreasonable for a district attorney to retain, for evidentiary purposes, or for forfeiture proceedings, cash found in possession of a suspect at the time of a drug-related arrest.

While not condoning the acts of the prosecutor in retaining the personal property of a suspect which was not shown to be connected in any way to the criminal offenses charged, for use in satisfaction of a possible future favorable verdict in a civil action against the defendant by a law enforcement officer, we find no reversible error. The possible resale value of used rings, of the value estimated by the owner in this case, would have been of minimal aid in the retention of an attorney. De minimis error does not require reversal.

5. Appellate counsel alleges that Count 3 of the indictment "failed to state a claim or, alternatively, an essential element of the offense, the definition of possession, was not charged." As argued in the brief, this enumeration states two claims of error. It is contended "[t]here is no offense . . . which specifically prohibits unlawfully *and with force and arms* possession and having in one's custody and control, cocaine." Secondly, counsel claims "the trial court never charged the jury concerning the definition of possession."

First, an enumeration of error should contain but one allegation of error. *Pope v. Triangle Chemical Co.*, 157 Ga. App. 386 (1) (277 SE2d 758); *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (275 SE2d 142). Secondly, OCGA § 16-13-30 (a) provides that "it is unlawful for any person to possess or have under his control any controlled substance." Cocaine is a controlled substance. The indictment, Count 3, alleged that defendant "unlawfully and with force and arms, did possess and have under his custody and control, cocaine." Because "with force and arms" is not a part of the statute violated, it is surplusage, unnecessary to constitute the offense, need not be proved, and may be disregarded. *Smith v. State*, 130 Ga. App. 390 (1) (203 SE2d 375); accord *Hicks v. State*, 149 Ga. App. 459 (1) (254 SE2d 461). The indictment is couched in the words of the statute and correctly informs the defendant of the offense sought to be charged. *McDonald v. State*, 222 Ga. 596 (1) (151 SE2d 121). It is not deficient in

the particulars charged.

Contrary to appellant counsel's assertion, the trial court did charge the jury on the definition of possession. He asked that the jury apply the ordinary definition of that word. Terms of common usage and meaning need not be specifically defined in the charge to a jury. *Smith v. State*, 249 Ga. 228, 229 (290 SE2d 43); *Anderson v. State*, 226 Ga. 35 (2) (172 SE2d 424). In the absence of a request, the court's failure to define the meaning of terms used in the charge, ordinarily is not grounds for reversal. *Dix v. State*, 238 Ga. 209, 215 (232 SE2d 47). After the jury requested a recharge on possession, the court complied and asked for exceptions. Defendant's counsel replied: "None, Your Honor." We find no error.

6. The defendant contends the evidence was insufficient to prove his guilt of possessing cocaine and having it under his control and custody. We do not agree. Possession may be joint or exclusive, and actual or constructive. *Dalton v. State*, 249 Ga. 720, 721 (292 SE2d 834); *Stevens v. State*, 165 Ga. App. 814 (2) (302 SE2d 724). The difference between actual and constructive possession is one of degree and "often so shade into one another that it is difficult to say where one ends and the other begins." *Dalton*, supra, p. 721. Where drugs are found in the "immediate presence" of the defendant, the jury is authorized to find they are "in the constructive possession" of the accused. *Wisdom v. State*, 234 Ga. 650, 654 (217 SE2d 244).

In the instant case, Roland Vaughn, Chief of Police for the City of Conyers, executed a search warrant at 897 Doeskin Drive in Rockdale County, the home of Charles Hays a/k/a Rick Hays. He was accompanied by six officers. Chief Vaughn knocked on the door and announced that he was a police officer and had a search warrant. No response was received and he yelled "Police Officers, Search Warrant." Hearing a noise inside and fearing an attempt to conceal evidence, the chief kicked the door open and stepped inside, again stating that he was a police officer and had a search warrant. He saw movement out of the corner of his eye and was fired upon by a person inside the house, later identified as the defendant. Vaughn returned the fire and then the defendant shot the officer in the right leg and that bullet went completely through both legs. Another officer stepped into the room and fired a shotgun at the defendant who surrendered. The defendant was the only person in the house. Drug paraphernalia was found with cocaine residue on it. Latent fingerprints found on such paraphernalia did not match the defendant. Garvey's fingerprints were found on a beer bottle, a coke can, and a Kentucky Fried Chicken cup. A small glass vial was found inside a brown bag, discovered by the fireplace in a downstairs room. It contained cocaine. There was evidence that other persons were staying at this house and could have had access to the cocaine.

On the evening preceding defendant's arrest, Ronnie Truelove testified that he was at the Doeskin Drive house with the defendant and Rick Hayes, the owner. Defendant was wearing a shoulder holster with a firearm. Truelove had discussed the purchase of an ounce of cocaine with Garvey and Garvey had quoted him the price of $2,500. Truelove said the price was too high. Garvey said "he thought they had an ounce gone." He saw a white powdery residue in the house that night. The jury was charged on parties to a crime, equal access, and circumstantial evidence.

This court has consistently held that " '[m]erely finding contraband on premises occupied by defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime.' [Cit.] Presence at the scene of a crime and nothing more will not support a conviction. [Cit.]" *Blankenship v. State*, 135 Ga. App. 482, 483 (218 SE2d 157). Here, the defendant was staying, temporarily, in a house belonging to another. The owner of the house and, at least, two others had access to the area in which the cocaine was found. However, here a witness testified to negotiations with the defendant to purchase cocaine and defendant quoted him a price and told him "they had an ounce gone." In addition, at the time the cocaine was discovered, the defendant was the only person found in the house and had defended the house from execution of a search warrant by the police. Whether the evidence presented is sufficient to rebut the evidence of equal access is an issue for the jury. *Gumina v. State*, 166 Ga. App. 592, 593 (305 SE2d 37). The evidence in the instant case would authorize a finding that the defendant, and the others having equal access to the drugs, were in joint constructive possession of the contraband. *Anderson v. State*, 166 Ga. App. 459, 460 (304 SE2d 550); *Pamplin v. State*, 164 Ga. App. 610, 611 (298 SE2d 622); *Teems v. State*, 161 Ga. App. 339 (3) (287 SE2d 774).

When viewed in the light favorable to the verdict, as we are required to do, the evidence was sufficient to enable any rational trier of fact to find the existence of the offenses charged beyond a reasonable doubt. *Stinson v. State*, 244 Ga. 219 (4) (259 SE2d 471).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

## ON MOTION FOR REHEARING.

Appellate counsel for defendant contends we "overlooked appellant's second enumeration of error, wherein he claimed that he received ineffective assistance of counsel." The second enumeration of error states: "The trial court erred when it denied defendant's motion for continuance of one week, or alternatively, the defendant received ineffective assistance of appointed counsel." This was but one of two

enumerated errors that were stated in the alternative. We pointed out, in the opinion, that "an enumeration of error should contain but one allegation of error." OCGA § 5-6-40; *Pope*, supra; *MacDonald*, supra. It is arguable that the alternative statement is but one error. If so, the enumerated error was answered when we held there was no error in the denial of the motion for the continuance for one week "on the basis that he was unprepared." See Division 3 above. At trial, counsel raised an argument of ineffectiveness only in the context of sufficiency of time to prepare for trial. He advised the court: "This total argument is intended simply to point out to the court that based on the timeliness involved, Mr. Garvey had ineffective counsel and that adequate preparation time was not there. . . ." On appeal, in the brief, counsel again stated: "If this court finds that appointed counsel . . . should have been ready for trial on the date it was called, then this court should find that the defendant received ineffective assistance of counsel." When this court found no reversible error in the denial of the requested continuance, this holding necessarily included consideration of all arguments in support of the enumeration, including the one that counsel had inadequate time to prepare and was thus ineffective.

Our review of the record (including counsel's *pretrial motions* to suppress, in limine, for discovery, for indictment and witnesses, and a *Brady* motion — with brief of law), and the transcript of testimony, show adequate preparation, consultation and representation. See *Austin v. Carter*, 248 Ga. 775 (2) (285 SE2d 542).

*Motion for rehearing denied.*

DECIDED SEPTEMBER 10, 1985 —
REHEARING DENIED SEPTEMBER 30, 1985.

*Rhonda A. Brofman*, for appellant.
*Robert F. Mumford, District Attorney*, for appellee.