### 72492. ARILOTTA v. FIRST GEORGIA INSURANCE COMPANY.
(346 SE2d 391)

DEEN, Presiding Judge.

First Georgia Insurance Company brought suit against Frank Arilotta, a jeweler, as subrogees of Mrs. Boardman and her husband, claiming title to a brooch in Arilotta's possession and demanding the sum of $8,000. Shortly before trial, the complaint was amended and the appellees elected to receive the brooch rather than the monetary damages. The jury verdict awarded the brooch to the appellees, and Arilotta appeals.

The evidence showed that in May of 1983, a young woman named Angel Withers went to Frank Arilotta's place of business, Jewelers Service, and showed him a diamond brooch in the shape of a bow-knot containing two large Chatham emeralds, and asked him to determine whether it was a genuine piece of jewelry or merely costume jewelry. Arilotta, who has been a jeweler for over thirty years, examined it and advised her that it was genuine. Ms. Withers informed

him that she had inherited it from her aunt in New York and asked if he wished to purchase it. Arilotta declined, but later recalled that a long-time customer had expressed an interest in purchasing an old-fashioned piece of jewelry in the shape of a bow-knot with blue sapphires rather than emeralds. Arilotta contacted the customer, Mr. Bush, who expressed an interest in seeing the brooch. The jeweler claims he checked the home address and telephone number that Angel Withers gave him in an effort to determine if the brooch was stolen. When her address and telephone number proved to be genuine, he concluded that the brooch was not stolen. A meeting was arranged and a purchase price of $9,000 was agreed upon. Arilotta received a commission of $1,600 and repaired minor damage to the clasp. Mr. Bush presented the brooch to his wife, who wore it to a wedding reception for Mrs. Boardman's daughter. Mrs. Boardman saw the brooch and advised Mrs. Bush that it looked similar to one which she had owned that had been lost, misplaced, or stolen. Mr. Bush immediately took it back to Arilotta, advising him that it was stolen or misplaced by Mrs. Boardman, and requested that the purchase price be refunded. As Bush was an old customer, Arilotta reimbursed the $9,000 that he had paid for the brooch and retained possession of it.

Mr. Wulk, a jeweler who was familiar with Mrs. Boardman's brooch, testified that he removed two diamonds from it and replaced them with the Chatham emeralds. He had a record of the measurements of the stones in the brooch. At trial he made measurements of the brooch purchased by Mr. Bush, compared them to those he had on file, and positively identified it as Mrs. Boardman's brooch.

Mrs. Boardman testified that she had been given the brooch by her grandmother approximately thirty-five years ago and that she had the diamonds removed to be used as engagement rings for her sons' fiancees. She had Mr. Wulk replace them with Chatham emeralds. She discovered that the brooch was missing during the 1982 Christmas season, when a theft occurred at her home in which more than $23,000 worth of jewelry was discovered to be missing. She also testified that she was a customer of Palmer's Cleaners and that she left clothing to be picked up at a particular place in her home by the Palmer's driver.

An employee of Palmer's Cleaners testified that during the 1982 Christmas season she stepped on an item of jewelry while shaking out some clothing and kicked it aside until she finished sorting clothes. She later picked it up and placed it in a bin for misplaced and found items, and advised other employees that a brooch had been found. After some time she mentioned to another employee, Daisy Skinner, that no one had identified or claimed the brooch and was wondering if it was genuine or costume jewelry. Mrs. Skinner offered to take it to her friend, Angel Withers, who was knowledgeable about jewelry and

could perform a test to determine if the jewelry was real. Mrs. Skinner testified she took the brooch to Angel Withers and asked her to return it after she performed the test. It was not returned and she had not seen it since she gave it to Angel. *Held*:

1. The granting or denial of a continuance is a matter within the sound discretion of the trial court, and the court's determination will not be disturbed absent abuse. *Garvey v. State*, 176 Ga. App. 268 (335 SE2d 640) (1985). In the fact situation of the instant case we perceive no abuse of discretion and therefore find no merit in this enumeration.

2. We find from the record that each of the jury instructions to which appellant excepts is a correct statement of pertinent law and properly adjusted to the facts of the case at bar. Moreover, in the context of the jury charge as a whole, we find no error in the trial court's omission of charges urged by appellant. This court must look to the jury charge as a whole rather than to isolated segments when the appropriateness of the trial court's including or excluding certain instructions is challenged. Thorough examination of the record reveals no error of law, and appellant's remaining enumerations are without merit.

3. In *Mapp v. First Ga. Bank*, 156 Ga. App. 380 (274 SE2d 765) (1980), appellee bank repossessed and sold without notice to appellant an automobile in which (unbeknownst to appellant) the bank had a security interest. Appellant had acquired the automobile through a chain of title derived ultimately from operation of the Georgia Abandoned Motor Vehicles Act, Code Ann. Ch. 68-23, which Act had been declared unconstitutional by Georgia's Supreme Court. *Gore v. Davis*, 243 Ga. 634 (256 SE2d 329) (1979). This court observed, at 382: "We are cognizant of the . . . harshness of our holding in this case depriving Mapp of property which he had purchased in apparent good faith with no knowledge of the fatal flaw in his chain of title. However, we are bound to follow the laws of this state and the decisions of our Supreme Court even when, as here, the resulting decision effects a hardship upon an apparently innocent party." We can offer appellant only the cold comfort of reiterating the ancient maxim *caveat emptor*. Under the law, it is to the woman who originally brought in the brooch, or to his insurer (if any), that he must look for any possible redress of his loss.

*Judgment affirmed. Benham and Beasley, JJ., concur.*

DECIDED JUNE 12, 1986.

*Jim Blanchard, Jr.*, for appellant.

*Percy J. Blount*, for appellees.