The Constitution Publishing Company *v.* Way.

1. Where a joint action for libel was brought by two plaintiffs, one of them could be stricken and the action proceed in behalf of the other. An amendment effecting this, but not otherwise changing the declaration, was no cause for a continuance.
2. Although the original plaintiffs were described in the declaration as "J. M. & Fred. W. Way," the declaration complained of an injury

done to them personally by the publication of the alleged libel,. and not of an injury inflicted upon them as a firm or partnership, no firm or partnership being alleged or mentioned, and the declaration charging that the libel tended to blacken and destroy the petitioners' reputation for honesty, virtue and integrity, and expose them to public hatred, contempt and ridicule, as well as to damage them in their business, and the libelous matter being such as would seriously injure reputation apart from any business or any vocation whatever.

3. Where a publication is libelous of two persons, so that each of them would have a right of action against the libeler irrespective of the existence of any partnership between them, that the libel attributes to them a firm name is no obstacle to maintaining a several action by either for the publication of the libel.

4. An offer of the publisher of a newspaper, made pending a suit against him for a libel, to open the columns of the paper to the plaintiff for any explanation or statement he wishes to make, counts for nothing on the trial of the action.

5. The court did not err in admitting or excluding evidence, in charging the jury or in refusing to charge as requested, nor in overruling the motion for a new trial.

June 30, 1894.

Action of libel. Before Judge VAN EPPS. City court of Atlanta. March term, 1893.

The publication in the Atlanta Constitution newspaper, here sued on, was as follows:

"THE PROPRIETOR HAS SKIPPED.

"The Delmonico Restaurant on Pryor street closed.

"The Delmonico Restaurant, situated at 57 South Pryor street, was suddenly closed yesterday afternoon; and before numerous creditors could ascertain the fact, the proprietors had skipped for parts unknown. Four weeks ago Messrs. Ed. Way and his son came to Atlanta from Anniston, Ala. They were formerly residents of Yankton, S. D., and in various cities throughout the country opened restaurants. In this way they became experienced caterers, and came here with splendid recommendations. Looking about for a place at which to locate, they secured quarters at 57 South Pryor street, and there opened up the Delmonico restaurant. It was patronized by an excellent class of people and was fast growing into popularity. But all of that availed nothing. The two proprietors, father and son, had secured

everything which they had purchased, on credit. Tables, chairs, kitchen utensils and furnishings of all kinds were bought to be paid for later on. Even their groceries and meats were gotten in this way, and with a large number of firms they ran up big bills.. Yesterday afternoon about four o'clock the Messrs. Way & Son carefully took charge and removed all of the goods on hand that they wished. Then, without thinking to pay the grocers, butchers and other merchants who were waiting patiently for their money, the two restauranters folded their tents and quietly stole away. The place last night was deserted. The police were notified of the affair, and they made a careful search for them. But nowhere could the two men be found, and they have undoubtedly left the city. Behind them are many merchants who are anxious to get the father and son who have had such a short career in the city. The police are making every effort to get them, and will leave no stone unturned to capture the missing men."

The jury found for the plaintiff $1,513, and defendant's motion for a new trial was overruled. For the other material facts see the opinion.

DORSEY, BREWSTER & HOWELL, for plaintiff in error.
· BROYLES & SON, *contra.*

SIMMONS, Justice.

1–3. J. M. and Fred. W. Way brought an action for libel against the Constitution Publishing Company. On the trial of the case the court allowed an amendment striking the name of Fred. W. Way, and permitted the case to proceed in the name of J. M. Way, over the objection of counsel for the defendant that the amendment made a new and distinct cause of action as well as a new and distinct party, it being contended that the action as it originally stood was an action by a firm or partnership, and that the amendment converted it into an action by an individual. Counsel for the defendant also moved for a continuance, on the ground that they were not prepared to meet the case made by the amend-

ment, having prepared to defend against a firm and not against an individual. The court did not err in allowing the amendment, nor in overruling the motion for a continuance. Although the plaintiffs were described in the declaration as " J. M. & Fred. W. Way," it was not alleged that these persons composed a firm or partnership ; and the declaration complained of an injury done to them personally by the publication of the alleged libel, and not of an injury inflicted upon them as a firm or partnership. It alleged that the libel tended to blacken and destroy the petitioners' reputation for honesty, virtue and integrity, and expose them to public hatred, contempt and ridicule, as well as to damage them in their business; and the libelous matter was such as would seriously injure reputation apart from any business or any vocation whatever. Each of the plaintiffs, therefore, had a right of action against the libeler, irrespective of the existence of any partnership between them ; and the fact that the libel attributed to them a firm name was no obstacle to maintaining a several action by either for the publication of the libel. An action brought by them jointly could be amended by striking one of them, so as to proceed in behalf of the other only.

4. It was complained that the court erred in charging that "a mere offer on the part of the defendant company to allow the plaintiff to make a statement in their paper, or allow him the use of their paper (if any such offer was made after this suit was filed), cannot be considered as mitigation of damages or for any other purpose." There was no error in this charge. Such an offer is not a withdrawal or retraction of the libel. It is much the same thing as if one who has said of another, " This man is a thief," should offer to say, " He says he is not a thief." Where no retraction is published, the parties who have published the libel, by making such an offer,

. say in effect: " We will let you say in our newspaper that you deny the charge we make, and we will let the public judge between us." It would be going very far to say that this is such reparation or such an evidence of good faith as should entitle the wrong-doer to a reduction of the damages. If a prompt retraction of the charge is published, thus in some degree repairing or attempting to repair the wrong, the law allows this to be taken into consideration by the jury as a ground for reducing the damages; and even then, it has been held, the retraction must be made or offered before the person libeled has sought redress in the courts. (Tryon *v.* Evening News Association, 42 Mich. 549.) Where the publishers of a great newspaper have sent out to the world the statement that a man has defrauded his creditors, and has run off to escape them and the police, who are in pursuit of him, and it turns out that the statement is false and without foundation; and they do not retract it, but wait until after the injured party has brought suit against them, and then offer him merely the privilege of denying it himself in their newspaper, this is certainly very feeble reparation of the wrong.

5. The evidence warranted the verdict, and the court did not err in its rulings upon the admission or exclusion of evidence, in charging the jury or in refusing to charge as requested, nor in overruling the motion for a new trial.                    *Judgment affirmed.*