## 35126. STINSON v. THE STATE.

HALL, Justice.

This is Stinson's appeal from his conviction for the 1978 murder of Hilton Dowling. He raises arguments alleging jury misconduct, denial of sequestered voir dire, perjured testimony, and insufficient evidence.

The murder victim, Hilton Dowling, died between 12:30 a.m. and 12:45 a.m., New Year's Day, 1978. He was stabbed once through the heart. He was discovered near an automobile parts establishment in Nahunta, Georgia, where he had earlier been with appellant, "Pete" Stinson. Stinson's automobile was on the premises with the keys inside. Dowling's truck, which he had been driving earlier that evening, was missing.

During the hours preceding the death, Stinson and Dowling had been drinking together and driving around together in the truck. Stinson appeared to an onlooker to be nervous and was somewhat preoccupied with a new knife he had received for Christmas. Stinson was seen at approximately 11:30 p.m. in the parking lot of the automobile establishment jumping up and down, waving his arms, and appearing "crazy." Dowling's truck was nearby. At 12:15 a.m. New Year's Day, Dowling was seen in a local store, the Zippy Mart, while another man fitting Stinson's description sat in Dowling's truck which was parked outside. At approximately 12:25 a.m. a witness heard a car or truck engine roaring loudly down the highway from the direction of the automobile establishment, where Dowling's body was discovered approximately 20 minutes later.

A warrant was issued for Stinson's arrest, and later on New Year's Day he drove up to the sheriff's office in Dowling's truck, stating that he had been drunk the night before and could not remember what happened. Inside the truck within reach of the drivers's seat was Stinson's new knife, on which there was a blood smear matching Dowling's blood type. Medical evidence indicated the wound could well have been made by this knife.

Stinson was tried, and the jury were unable to agree, causing a mistrial. He was tried a second time and convicted of the murder. He raises four arguments on this

appeal.

1. Enumeration of error one argues that the court erred in respect to an attempt by the defense to impeach the verdict. The defense wished to subpoena all jurors for inquiry into whether they considered matters not in evidence. Specifically, Stinson argued that because the jury asked to hear again part of "Frank Ryner's" testimony, this means they had heard of an alleged telephone call by the deceased to Ryner, the substance of which would have been damaging to Stinson and which was not in evidence. The court allowed the two jurors who had misused the name to be subpoenaed, and both were specific that they were concerned about a call placed by Stinson, and did not hear anything about a call placed by deceased until the trial was over. The court overruled a motion for further subpoenas, and Stinson urges error in that ruling.

A reading of the transcript shows that this entire argument is without merit. There is, of course, no Frank Ryner, though there is a Kenneth Ryner (to whom the deceased made a call, evidence of which was kept out at trial), and a Frank Rivers (to whom Stinson made a call, evidence of which was admitted at trial). However, three times in his closing argument *defense counsel* spoke of "Frank Riner" as receiving a call from Stinson. The transcript of defense counsel's closing argument contains this sentence: "Well, he calls Frank Riner's house. He calls Frank Riner, to get Hilton's number to call him. And, Riner tells him, 'Hilton's dead, Pete. Hilton's dead.' "

It is little wonder then, that the jurors in question remembered the name as Frank Riner, since that is what defense counsel misnamed Frank Rivers in the argument immediately before deliberations commenced.

In short, the forbidden name Riner was injected into the trial by defense counsel himself and by no one else, and the argument that the jurors' recollection of the name shows misconduct is clearly without merit. The trial court did not err in refusing to allow further inquiry into this matter over and above the subpoena of two persons after verdict.

2. Stinson's second alleged error asserts that the trial court erred in refusing to allow him to question each

prospective juror in a sequestered setting about possible bias from exposure to an article which appeared January 5, 1978 in the Brantley Enterprise, a weekly paper with a large circulation in the area from which the jurors were drawn. The article was captioned "Christmas Present Used in Stabbing Death," and reported the arrest of Stinson, his statement that he did not remember what happened, and a reference to that statement as a "confession." Conceding that Code Ann. § 59-705 providing individual voir dire has not been construed to require mandatory sequestered voir dire, Stinson urges that under the reasoning of *Whitlock v. State,* 230 Ga. 700, 706 (198 SE2d 865)(1973) he should have been allowed it because during such questioning "the presence of the other jurors interfered with or contravened the underlying purposes of the voir dire." He argues that voir dire of a juror about the article would only educate the other jurors about its prejudicial effect.

We agree with the trial court that these conclusory statements by Stinson did not make an adequate showing of the need for sequestered voir dire. Nothing is shown to distinguish this situation from many other situations of newspaper coverage prior to trial. Contrary to Stinson's argument here, the only error we see in the article is the use of the word "confession" in referring to Stinson's statement that he could not remember events.

We note that the article was published in January and the second trial was not held until September. We also note that defense counsel asked only one prospective juror, Mrs. Brooker, if she had read the article, and she said she had; but to a further question she replied that she remembered nothing of it. No further questioning of her was done, and we see nothing indicating that defense counsel ever asked any other juror anything at all on the subject of newspaper publicity.

This falls far short of a showing of prejudice from denial of sequestered voir dire, and the trial court did not abuse its discretion in denying this motion. *Whitlock v. State,* supra; *Parham v. State,* 135 Ga. App. 315, 319 (217 SE2d 493) (1975). See *Kyles v. State,* 243 Ga. 490 (255 SE2d 10) (1979); *Hall v. State,* 243 Ga. 207, 208 (253 SE2d 160) (1979); *Ruffin v. State,* 243 Ga. 95, 97 (252 SE2d

472)(1979).

3. Stinson's third argument is that he should have been granted a new trial because one of the state's witnesses committed perjury. Without need for examining the circumstances under which actual perjury can produce a new trial, this argument is plainly without merit. The fact that the witness was more sure of her identification at trial than she had been at the committal hearing does not show perjury. She stated under cross examination that she did not feel that she had ever been asked before if the man she saw was actually present in the courtroom: "No one ever asked me if he was in here." Moreover, this identification evidence was merely cumulative.

4. The circumstantial evidence detailed above authorized Stinson's conviction of murder. Considering that evidence in the light most favorable to the prosecution, a rational trier of fact could have found guilt beyond a reasonable doubt. Jackson v. Virginia, — U. S. — (99 SC —, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 11, 1979 — DECIDED SEPTEMBER 10, 1979.

*Grayson P. Lane,* for appellant.
*Dewey Hayes, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

