## 67591. WILLIAMSON et al. v. LUCAS.

Sognier, Judge.

Lucas sued Williamson and Georgia Communications Corporation for defamation based on statements concerning Lucas made by Williamson during a radio talk show. The jury returned a verdict in favor of Lucas for $75,000 general damages and $125,000 punitive damages. On appeal to this court, the judgment was reversed as to damages. *Williamson v. Lucas*, 166 Ga. App. 403, 406 (6) (304 SE2d 412) (1983). On retrial, the jury awarded Lucas damages of $25,000 general damages and $35,000 punitive damages. Williamson and Georgia Communications Corporation appeal.

1. Appellants contend that the trial court erred by refusing to allow individual and isolated voir dire of those prospective jurors who indicated they had knowledge of the first trial, arguing that this was the only means for determining which jurors knew the amount of the first verdict without imparting such information to all jurors.

Whether or not to allow sequestered questioning of individual jurors is a matter within the discretion of the court. See *Stevens v. State*, 247 Ga. 698, 700 (2) (278 SE2d 398) (1981); *Finney v. State*, 242 Ga. 582, 585 (4) (250 SE2d 388) (1978). See also *Stinson v. State*, 244 Ga. 219, 220 (2) (259 SE2d 471) (1979). We agree with appellee that in the instant case defense counsel could have obtained the desired information in a less burdensome manner than that requested; for instance, by cautioning the prospective jurors not to mention any dollar amount but rather to answer by a "Yes" or "No" the question, "Do you know what damages, if any, were awarded in the prior proceeding?" We do not find that the trial court abused its discretion in this respect. This enumeration is without merit.

2. Appellants contend that the trial court erred (a) by failing to adequately instruct the jury on the question of damages and (b) by instructing the jury that the amount of damages was to be determined by the jurors' "enlightened conscience."

(a) The record reveals that contrary to appellants' contentions, the trial court in giving instructions regarding damages, used either the phrase "if any" or similar expressions importing the same mean-

ing several times. Thus, the jurors were given the option of determining, had the evidence so indicated, that no damages at all were appropriate. While appellants contend that the trial court erred by failing to give their request to charge on damages, it is not error to refuse to give a requested charge where the substance of the request is covered in the general instructions given. *Johnston v. Woody*, 148 Ga. App. 152, 155 (3) (250 SE2d 873) (1978); *Gates v. Southern R. Co.*, 118 Ga. App. 201, 203 (3) (a) (162 SE2d 893) (1968).

(b) Once the determination has been made that damages should be awarded in cases such as that *sub judice*, the proper standard for determining the amount is "the enlightened conscience of impartial jurors." *Atlanta Consolidated &c. Co. v. Hardage*, 93 Ga. 457, 459 (3)-460 (21 SE 100) (1893). See also *Franklin v. Evans*, 55 Ga. App. 177 (189 SE 722) (1937). Contrary to appellants' contentions, the "enlightened conscience" standard is not in conflict with OCGA § 51-5-10 (c), which provides that only those "actual, consequential, or punitive damages as have been alleged and proved . . ." may be allowed. Obviously the measure of damages is applied after the jury has determined that damages have been proved, and the trial court so instructed the jury in the instant case.

3. Appellants contend that the trial court erred by denying their motion for a directed verdict because appellee failed to allege and to prove damages as required by OCGA § 51-5-10 (c). This court held in the prior appeal, *Williamson*, supra at 405 (5)-406, that there was ample evidence of damages to authorize a verdict for appellee. Substantially the same evidence was presented on retrial. "Not only do we continue to adhere to that ruling as a matter of . . . law [see OCGA § 9-11-50; *Findley v. McDaniel*, 158 Ga. App. 445, 446 (280 SE2d 858) (1981)], but also our earlier ruling is binding upon us. *Atlanta Cas. Co. v. Williams*, 139 Ga. App. 732 (229 SE2d 534) (1976). This enumeration is still without merit." *Hixson v. Barrow*, 142 Ga. App. 65, 67 (2) (234 SE2d 805) (1977). See *Sam Finley, Inc. v. Barnes*, 156 Ga. App. 802, 803 (3) (275 SE2d 380) (1980).

4. Appellants contend that the trial court erred by ruling that the retraction provisions of OCGA § 51-5-11 apply only to printed media and not to electronic media. In the appeal of this case, *Williamson*, supra, the same question was raised — whether the retraction provisions of OCGA § 51-5-11 apply to preclude the award of punitive damages under OCGA § 51-5-10. Our court did not reach this question in the earlier appeal because no request to charge OCGA § 51-5-11 was made. However, in the case *sub judice*, a request to charge this statute was made and denied by the trial court. Thus, the question is now squarely raised.

The statute now codified at OCGA § 51-5-11 was enacted in 1958 (Ga. Laws 1958, p. 54) and modified in 1960 and reads as follows:

"Section 1. In any civil action for libel, charging the publication of an erroneous statement alleged to be libelous, it shall be relevant and competent evidence for either party to prove that the plaintiff requested retraction or omitted to request retraction. The defendant may allege and give proof that the matter alleged to have been published and to be libelous was published without malice, and that the defendant *in a regular issue* of the *newspaper or other publication* did, within three days after receiving written demand (or in the *next regular issue of the newspaper or other publication if the next regular issue be not published within three days after receiving such demand*), correct and retract the allegedly libelous statement in as conspicuous and public a manner as that in which the alleged libelous statement was published, and that if the plaintiff so requested, such retraction and correction was accompanied by an *editorial appearing in the same issue* as the retraction in which the allegedly libelous statement was specifically repudiated, or that no request for correction and retraction was made by the plaintiff. Upon proof of such facts, the plaintiff shall not be entitled to any punitive damages, and the defendant shall be liable only to pay actual damages. The defendant may plead the publication of the correction, retraction or explanation (including the editorial, if demanded) in mitigation of damages." (Emphasis supplied.) Ga. Laws 1960, pp. 198-199, Section 1.

"It is fundamental that the determining factor is the intent of the legislature and we look first to the words of the statute to determine what that intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was." *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746, 749 (2) (171 SE2d 521) (1969). In fact, "where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. [Cit.]" *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970).

Giving the words "newspaper or other publication" their "ordinary signification," OCGA § 1-3-1 (b), and observing their repeated, consistent, and exclusive use throughout the statute, it is clear that the legislature intended that the Act apply exclusively to newspapers and the printed media. While, according to Webster's, the word "publication" can be used to indicate an oral proclamation; nevertheless, when used conjunctively with "newspaper," we believe its meaning is restricted to a written publication. The use of the word "issue" is consistent with the exclusive reference to "newspaper or other publication." " 'The current of authority in this country, at least at the present day, is in favor of reading Statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation.' *Persons v. Hight*, 4 Ga. 474, 485-6 (1848). This prin-

ciple remains intact today." *Earth Management v. Heard County*, 248 Ga. 442, 444 (283 SE2d 455) (1981).

There is another rule of statutory construction applicable here: " 'All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it.' " *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375) (1940). In 1949, the General Assembly enacted a separate statute providing expressly for liability for defamatory statements "published or uttered in or as part of a visual or sound broadcast. . . ." Ga. Laws 1949, p. 1137, §§ 1-3 (now OCGA § 51-5-10 (a)). Nine years later, in 1958, the retraction statute (now OCGA § 51-5-11) was enacted; two years after enactment, the statute was amended to add a specific provision for the retraction of the statement within three days of written demand "(or in the next regular *issue* of the *newspaper or other publication* if the next regular *issue* be not *published* within three days after receiving such demand). . . ." (Emphasis supplied.) Ga. Laws 1960, pp. 198-199, Section 1. Also added by amendment was provision for "an editorial *appearing in the same issue* as the retraction. . . ." Id. In drafting or amending the retraction statute, the legislature could have provided for retraction of statements made as part of a visual or sound broadcast, but did not do so. "We must presume that its failure to do so was a matter of considered choice." *Hollowell v. Jove*, 247 Ga. 678, 683 (279 SE2d 430) (1981).

While our holding is based upon our determination that the statute in question contains no ambiguity necessitating judicial interpretation, if the statute *were* ambiguous, we would then be constrained to resort to examination of its preamble (see *Chambers Lumber Co. v. Martin*, 112 Ga. App. 826 (146 SE2d 529) (1965)), which clearly states that the Act pertains to retraction of libelous statements made by newspapers. See Ga. Laws 1960, p. 198.

The trial court did not err in refusing to charge OCGA § 51-5-11 as the retraction statute is by its terms clearly inapplicable to defamatory statements made in a radio or television broadcast.

*Judgment affirmed. McMurray, C. J., Quillian, P. J., Banke, P. J., Birdsong, Carley, Pope, and Benham, JJ., concur. Deen, P. J., dissents.*

DECIDED JUNE 22, 1984 —
REHEARING DENIED JULY 19, 1984 —

*J. Dunham McAllister*, for appellants.
*Denmark Groover, Jr.*, for appellee.

DEEN, Presiding Judge, dissenting.
For the following reasons I respectfully dissent to the majority

opinion.

In his second enumeration appellant contends that the trial court erred in ruling that the retraction provisions of OCGA § 51-5-11 apply only to printed media and not to electronic media, and that the jury was therefore authorized to award punitive damages if it determined that such were appropriate. The statute reads in pertinent part as follows:

"Admissibility of evidence in libel action concerning correction and retraction; effect thereof on damages.

"(a) In any civil action for libel which charges the publication of an erroneous statement alleged to be libelous, it shall be relevant and competent evidence for either party to prove that the plaintiff requested retraction or omitted to request retraction.

"(b) In any such action, the defendant may allege and give proof of the following matters, as applicable:

"(1) (A) That the matter alleged to have been published and to be libelous was published without malice;

"(B) That the defendant in a regular issue of the newspaper or other publication in question, . . . corrected and retracted the allegedly libelous statement in as conspicuous and public a manner as that in which the alleged libelous statement was published; . . .

"(2) That no request for correction and retraction was made by the plaintiff.

"(c) Upon proof of the facts specified in paragraph (1) or (2) of subsection (b) . . ., the plaintiff shall not be entitled to any punitive damages and the defendant shall be liable only to pay actual damages. The defendant may plead the publication of the correction, retraction, or explanation . . . in mitigation of damages." It is undisputed that the plaintiff in the action below did not request a correction or retraction, and that none was made. It is also undisputed that the statute nowhere expressly mentions defamation by broadcast, but names "newspaper or other publication."

Georgia law is unclear with respect to the scope of OCGA § 51-5-11. In those few cases in which a question has arisen concerning the relationship between punitive damages and a request *vel non* for a retraction, Georgia courts have declined to address the issue directly but have disposed of the case on other grounds. See *Fuqua Television v. Fleming*, 134 Ga. App. 731, 734 (215 SE2d 694) (1975).

Decisions in other jurisdictions differ both as to the legal effect of a failure to demand a retraction, and as to whether statutes requiring a request for retraction as a prerequisite to receiving punitive damages (such as Georgia's statute) apply equally to printed media and to broadcast media, especially when the statute does not expressly name one specific medium or another. See 50 AmJur2d, Libel & Slander, § 186 et seq.; 13 ALR 794; 84 ALR3d 1249 and annots. However, the

decisions in a large number of jurisdictions (including Georgia) make clear what is the rationale underlying the requirement that in order to be eligible for punitive damages (or, in some jurisdictions, as a precondition to filing an action), plaintiff must first request a retraction. The principle involved is that the plaintiff should be afforded an opportunity not only to try to right the wrong but also to mitigate his damages. See, e.g., *Constitution Pub. Co. v. Way*, 94 Ga. 120 (21 SE 139) (1894); Hucko v. Joseph Schlitz Brewing Co., 100 Wis.2d 372 (302 NW2d 68) (1981); Wheeler v. Green, 286 Or. 99 (593 P2d 777) (1979); Werner v. Sou. Calif. Assoc. Newspapers, 35 Cal.2d 121 (216 P2d 825) (1950); Lick v. Owen, 47 Cal. 252 (1874); Hotchkiss v. Oliphant, 2 Hill (NY) 510 (1842). See also 84 ALR3d, Libel & Slander, § 1, pp. 1250, 1266. But see Madison v. Yunker, 589 P2d 126 (Mont.) (1978) (statute requiring that defendant be given opportunity to correct libelous statement held violative of the state constitution on grounds of free speech and free access to court).

In a landmark decision, *American Broadcasting &c. v. Simpson*, 106 Ga. App. 230 (126 SE2d 873) (1962), the late Judge Eberhardt of this court traced the development of common-law actions for slander and libel and noted, at 237, that recognition of libel as a separate right of action represented the capacity of the common law to respond to historical changes, so as to enable the courts to frame an appropriate remedy for any right which, though new in form, is recognized by the law. The eminent jurist quotes, at 237, from *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 193 (50 SE 68) (1904): " 'The novelty of the complaint is no objection when an injury recognizable by law is shown to have been inflicted on the plaintiff. In such a case, "although there be no precedent, the common law will judge according to the law of nature and the public good." ' " Judge Eberhardt then analogizes the emergence of defamation by broadcast — or "defamacast," as he dubs it — to the development of written defamation (libel) as a tort separate from, though derivative of and governed by the same principles as, oral defamation (slander). Rejecting the traditional spoken/written distinction as confusing in cases involving defamation by broadcast, and as in any event only tangentially related to the real issues involved in defamation, Judge Eberhardt observed that "the great body of the case law [in the libel/slander area] will not become obsolete . . . because . . . [essential] principles . . . will continue to apply. A more complete development of the rules dealing with 'defamacast' will of necessity await later cases." *American Broadcasting &c. v. Simpson*, supra at 240, n. 8.

It is true that, as the majority points out, the statute in question, OCGA § 51-5-11, expressly mentions only newspapers, and that, as appellee contends, the disjunctive phrase "or other publication" is capable of being construed as referring only to print media. It is also

true that § 51-5-11 was enacted nine years after the enactment of § 51-5-10 ("Liability for defamatory statements in visual or sound broadcasts; damages"); that "[a]ll statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law," *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700 (10 SE2d 375) (1940); and that, on the basis of the principle *expressio unius est exclusio alterius*, we might conclude that had the legislature intended to make the broadcast media subject to the provisions of § 51-5-11, it would have done so expressly. Compare *Chilivis v. Turner Communications Corp.*, 140 Ga. App. 648 (231 SE2d 425) (1976), where videotapes were held not included in motion picture films, although the writer at page 650 takes exception to this construction, and the Supreme Court reversed in this case on certiorari. In the latter situation the legislature had not acted; here it acted after § 51-5-10 was law.

The courts have traditionally (and properly) been wary of appearing to "legislate." "Usurpation of the functions of the legislature by the courts is never justified, and will not be tolerated. But this fundamental principle is not upheld by a refusal of the judiciary to discharge to the limit of its authority the functions imposed upon it by the Constitution, upon the excuse that further legislation is necessary." *Hornsby v. Smith*, 191 Ga. 491, 500 (13 SE2d 20) (1941). "For every right there shall be a remedy; every court having jurisdiction of the one may, if necessary, frame the other." OCGA § 9-2-3. As Georgia's Supreme Court held in *Botts*, supra at 701, statutes "are to be construed in connection and in harmony with the existing law, and as a part of a *general and uniform system* of jurisprudence." (Emphasis supplied.) In the light of the pervasiveness and ever-increasing influence of the broadcast media in today's world, we view OCGA § 9-2-3 as a mandate to construe § 51-5-11 in compliance with the principle enunciated in *Botts*, supra, and to frame one of those "rules" dealing with defamacast, the necessity for which Judge Eberhardt predicted in *American Broadcasting*, supra at 240, n. 8.

Decisions in a number of other jurisdictions have held that the fundamental principles of law governing defamation by newspapers are applicable to defamation by radio and television broadcasts. See, e.g., Werner v. Sou. Calif. Assoc. Newspapers, supra; see also 84 ALR3d, Libel & Slander, § 2 (a), p. 1251 et seq. These decisions comport with Judge Eberhardt's analysis, supra. Moreover, newspapers, radio and television publications (broadcasts) *all* now provide editorials. Indeed, the latter two media are required to provide editorials or publication of news favorable to both sides when controversial issues arise, while this is not required of newspapers. This is done because radio and television use the airwaves, which belong collectively to the people. This type of compulsory editorializing, or fairness doctrine, is

not applicable to newspaper editorializing, as airwaves are not there involved. The point is that radio and television publications or broadcasts now are required under the fairness doctrine to do more editorializing than any other media, particularly as compared to the lack of any requirements on the printed media. The duty to editorialize has a reasonable relationship to the duty of retraction if false information is provided. Miami Herald Pub. Co. v. Tornillo, 418 U. S. 241 (94 SC 2831, 41 LE2d 730) (1974). Compare Brandywine — Main Line Radio v. Fed. Communications Comm., 473 F2d 16, 64 (D.C.Cir. 1972).

Pursuant to this logic, we would hold that the provision of OCGA § 51-5-11 requiring a request for retraction as a condition precedent to recovery of punitive damages applies equally to oral defamation, written defamation, and defamation by broadcast. In so holding, we would rely on the words of yet another eminent Georgia jurist, the late Judge Felton: "Such decisions as this do not involve a disregard of statutes, or sound rules of conduct or any constitutional provision . . . [This court's duty] is not to perpetuate error or to allow our reasoning or conscience to decay or to turn deaf ears to new light and new life." *Brown v. Ga.-Tenn. Coaches*, 88 Ga. App. 519, 532 (77 SE2d 24) (1963). As Judge Eberhardt remarked in *American Broadcasting*, supra at 238, "The genuis of the common law has been its ability to meet the challenges posed by changing circumstances."

We find singularly unpersuasive appellee's urging that we maintain the arbitrary, artificial, ambiguous, and misleading distinction between libel (defamation) by broadcast and the more traditional forms of defamation. Particularly inapposite is appellee's invocation of Art. III, Sec. VII, Par. IV of the Georgia Constitution, which reads as follows: "No law shall pass which refers to more than one subject matter or contains matter different from what is expressed in the title thereof." The history of this paragraph makes it plain that the purpose of inserting such a provision in the constitution was to prevent surreptitious legislation such as that involved in the infamous "Yazoo Fraud," as well as to prevent the attachment to valid bills of unrelated "riders" that are unlikely to succeed independently. See, e.g., *Camp v. MARTA*, 229 Ga. 35 (189 SE2d 56) (1972); *Kaigler v. Bd. of Commrs. of Roads & Revenue*, 174 Ga. 849 (164 SE 193) (1932). The constitutional prohibition requires consistency between the act's title and its contents and pertains in no way whatsoever to judicial interpretation. See, e.g., *Crews v. Cook*, 220 Ga. 479 (139 SE2d 490) (1964). Moreover, appellee's attempt to support his specious argument with a 1914 case confining libel to defamation "expressed by print, writing, pictures, or signs" is totally inappropriate, inasmuch as commercial radio — and *a fortiori* television — did not exist at that time. See *Spence v. Johnson*, 142 Ga. 267 (82 SE 646) (1914). Such "reasoning" exemplifies the obdurate resistance to "new light and new life" de-

plored by Judge Felton in *Brown*, supra.

For the foregoing reasons, I would respectfully dissent.