A92A1767. J & A PIPELINE COMPANY, INC. v. DeKALB
COUNTY.
(430 SE2d 13)

COOPER, Judge.

Appellant, a provider of labor and materials for a public project, appeals from the trial court's dismissal of its complaint against DeKalb County (hereinafter "the county") for failure to state a claim as well as lack of jurisdiction and improper venue.

Because this appeal is from the grant of a motion to dismiss based in part on the complaint's failure to state a claim, we view the pleadings in a light most favorable to appellant. *Wehunt v. ITT Business &c. Corp.*, 183 Ga. App. 560 (2) (359 SE2d 383) (1987). In September 1990, the county contracted with WDC Contractors, Inc. ("WDC"), a general contractor, to provide improvements to its park system; and WDC in turn contracted with appellant to provide labor and materials for the project. WDC gave the county a payment bond with Contractors Surety & Fidelity Company, Ltd. ("CSFC") as surety. CSFC, which was not authorized to do business in Georgia, attached to the payment bond the affidavit of its attorney-in-fact, in which he stated under oath that CSFC "is the fee simple owner of real estate equal in value to the amount of the bonds to be filed in connection with the doing of any public work in DeKalb County, Georgia[1] over and above any and all liens, encumbrances, and exemption rights allowed by law, all as more particularly set forth on the 'Schedule of Real Estate' attached hereto." See OCGA § 36-82-102. However, a look at this schedule reveals that the most valuable listed asset was not a fee simple interest in real estate and that the description of several other assets was legally inadequate for any purpose: "Douglas County — 2½ acres"; "Elder Co. Arizona — 240 acres"; and "Mountain View Sub. — Lots 19, 20 & 21, Blk 26." Only two of the listed parcels of real estate had adequate descriptions. One of these parcels was in Georgia but provided only $46,000 of equity for security; the other provided $3,050,000 but was in Hollywood Hills, California. Nonetheless, the county accepted the bond without any further inquiry.

When WDC failed to pay appellant all the monies due for labor and materials on the project, appellant filed a formal payment bond claim. The county sent appellant a copy of the bond, affidavit and schedule of real estate, and appellant's investigation revealed that

---

[1] CSFC provided this same affidavit in support of several different payment bonds for several different public projects in DeKalb County. Accordingly, there are numerous other subcontractors and materialmen in the same position as appellee, with judgments or potential judgments against general contractors and CSFC but no solvent party from whom they can collect. Several of these other subcontractors and materialmen provided us with amicus briefs, which we have read and considered.

CSFC was insolvent. Appellant then sued, WDC, CSFC and the county in Gwinnett County, the county of residence of WDC. The county moved to dismiss, and the trial court granted the motion, concluding both that appellant's complaint failed to state a claim against the county and that jurisdiction and venue with respect to the county were improper in Gwinnett. Appellant went on to obtain judgments on the merits against WDC and CSFC, both of which are judgment-proof, and then brought this appeal.

1. In three enumerations of error, appellant argues that the trial court erred in concluding that its complaint failed to state a valid claim against the county based on the county's breach of its statutory duty. " 'A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.' [Cit.]" *Mitchell v. Dickey*, 226 Ga. 218, 220 (1) (173 SE2d 695) (1970); accord *Hall & Sosebee Trucking Co. v. Smith*, 201 Ga. App. 282, 283 (410 SE2d 784) (1991).

A county cannot enter into a contract with a general contractor unless the general contractor provides "[a] payment bond *with good and sufficient surety* . . . for the use and protection of all subcontractors and all persons supplying labor, materials, machinery, and equipment in the prosecution of the work provided for in the contract." (Emphasis supplied.) OCGA § 13-10-1 (b) (2) (A); see also OCGA § 36-82-101. "If the payment bond . . . required in paragraph (2) of subsection (b) of Code Section 13-10-1 . . . is not taken in the manner and form required in this Code section, the corporation or body for which work is done under the contract shall be liable to all subcontractors and to all persons furnishing labor, skill, tools, machinery, or materials to the contractor . . . for any loss resulting to them from such failure." OCGA § 36-82-102. These statutes together impose a duty on the county to require a payment bond, and provide for liability on the part of the county if it breaches this statutory duty. See *City of Atlanta v. United Elec. Co.*, 202 Ga. App. 239, 240 (2) (414 SE2d 251) (1991); *Kelly Energy Systems v. Bd. of Commrs.*, 196 Ga. App. 519 (396 SE2d 498) (1990).

The issue presented here is the intended nature of that duty. The county contends, and the trial court held, that the county fulfilled its duty under OCGA §§ 13-10-1 and 36-82-101 et seq. as a matter of law when it went through the formality of obtaining a payment bond, regardless of whether the surety was "good and sufficient" or even whether the documents supporting the bond and other circumstances surrounding the transaction made it unreasonable to approve and file the bond without further inquiry into whether the surety was "good

and sufficient." We disagree. The county's position elevates form over substance, ignoring and undermining the purpose of the Act, which is to protect subcontractors and materialmen. See *Huddleston Concrete Co. v. Safeco Ins. Co.*, 186 Ga. App. 531, 533 (1) (368 SE2d 117) (1988). Moreover, the county's suggested construction ignores the language of the statute, rendering the phrase "good and sufficient" meaningless, "thereby violating the rule that, where possible, 'effect is to be given to all the words of a statute.' [Cit.]" *Saleem v. Bd. of Trustees &c. of Atlanta*, 180 Ga. App. 790, 791 (2) (351 SE2d 93) (1986). Contrary to the county's contention, OCGA § 1-3-1 (c), which provides in part that "substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient," does not negate the possibility that the county had the duty to act reasonably and exercise due diligence; it simply indicates the county would not be liable if it substantially complied with that duty. In similar situations involving public officials accepting bonds under other statutes we have held that mere formalities are not enough. For example, in *Atlas Supply Co. v. U. S. Fidelity &c. Co.*, 126 Ga. App. 483, 484 (1) (191 SE2d 103) (1972), we held that a county clerk discharging a materialman's lien upon acceptance of a bond has the duty to exercise due care and diligence in determining the surety's solvency and sufficiency; and in *Dunn v. U. S. Fidelity &c. Co.*, 45 Ga. App. 249 (164 SE 480) (1932), we held that a sheriff releasing seized property after accepting a replevy bond with an insolvent surety is liable for damages caused thereby if he fails to exercise due care and diligence under the circumstances. Similarly, we conclude here that, while a county is not absolutely liable whenever a surety on a payment bond is insolvent, it may be liable under OCGA § 36-82-102 if it fails to inquire adequately into the solvency and sufficiency of the surety where the circumstances surrounding the transaction make such failure to engage in further inquiry unreasonable.

The county also argues that its duty was fulfilled as a matter of law because it obtained from the surety the affidavit required by OCGA § 36-82-102, which states in pertinent part: "If the surety named in the [bond] is other than a surety company authorized by law to do business in this state, such [bond] shall not be approved and filed unless such surety makes and files an affidavit with such [bond], stating under oath that he is the fee simple owner of real estate equal in value to the amount of the [bond] over and above any and all liens, encumbrances, and exemption rights allowed by law." However, the affidavit requirement set forth in the quoted sentence is clearly intended to be *in addition to* rather than *instead of* the requirement that the surety be approved as "good and sufficient." It would make no sense to allow a lesser standard for acceptance of bonds with sureties not authorized to do business in this state than

for those who are so authorized, and there is no language in the statute which would suggest, much less compel, such a result.

The Legislature amended OCGA § 13-10-1 in 1991 — after the bond in this case was accepted — to provide that the required payment bond "shall be approved as to form and as to the solvency of the surety by the officer of the [public entity] who negotiates the contract on behalf of the public entity." OCGA § 13-10-1 (f). The county acknowledges that it may now have a duty beyond the mere formality of obtaining a document purporting to be a bond and a supporting affidavit where required but asserts that we can only conclude that appellant states a claim in this case by effectively holding that this new requirement applies retroactively. We do not accept this assertion. Rather, we conclude that this 1991 amendment explicitly clarified the previously implicit understanding that a surety is not "good and sufficient" unless it is solvent. Cf. *Abacus, Inc. v. Hebron Baptist Church*, 201 Ga. App. 376, 377 (411 SE2d 113) (1991).

In this case, facts and circumstances rendering the county's failure to make further inquiry unreasonable could be proved within the framework of the complaint. See *Mitchell v. Dickey*, supra. Accordingly, appellant's complaint should not have been dismissed for failure to state a claim based on breach of the county's statutory duty.

2. Appellant argues in two enumerations of error that its complaint also stated a valid claim against the county based on an "equitable lien," citing *Pembroke State Bank v. Balboa Ins. Co.*, 144 Ga. App. 609 (241 SE2d 483) (1978). No mechanic's lien may be filed against public property, see *Whitley v. Bryant*, 59 Ga. App. 58 (200 SE 317) (1938), and appellant cannot rely on equity to establish a lien-based claim against the county which is disallowed by law. Cf. *Decatur County v. Roberts*, 159 Ga. 528, 534 (2) (126 SE 460) (1925) (implied contract will not arise where express contract by local government unauthorized by law); OCGA § 36-1-4 (county not liable to suit for any cause of action unless made so by statute). *Pembroke* does not hold the contrary. However, *Pembroke* does hold that a subcontractor may have an "equitable lien" in funds *held by* the county but belonging to another — such as funds already earned by a general contractor but not yet paid over to it when it becomes insolvent. In such a situation, the subcontractor's "lien" would allow its claim priority over the claims of the insolvent contractor's other creditors. See *Pembroke*, supra. Under this theory, appellant has a claim based on an "equitable lien" only if and to the extent the county is holding a fund of monies earned by WDC but not yet paid to it. The county argues no such fund exists. However, since the existence of such a fund is provable within the framework of appellant's complaint, see *Mitchell v. Dickey*, supra, this claim also should not have been disposed of by motion to dismiss.

3. In three enumerations of error, appellant contends that the trial court erred in alternatively dismissing its claim for lack of jurisdiction and improper venue. Appellant first argues that the county was properly sued in Gwinnett County because WDC, the county's alleged joint obligor, was a resident of Gwinnett County, and suits against joint obligors residing in different counties may be tried in either county. Ga. Const. of 1983, Art. VI, Sec. II, Par. IV; OCGA § 9-10-31. However, WDC and the county cannot be considered "joint obligors," as the obligation of WDC arose from its breach of a contractual promise to pay appellant while the alleged obligation of appellee arose from the alleged breach of its statutory duty to require a good and sufficient payment bond. Appellant's reliance on *Eatonton Oil &c. Co. v. Greene County*, 53 Ga. App. 145 (4) (185 SE 296) (1936) is misplaced because that case, while establishing the possibility that the county may face statutory liability, did not involve jurisdiction or venue and did not describe the county's potential statutory liability as "joint" with the contractual liability of the general contractor.

Appellant next argues that, even if WDC and the county were not "joint obligors," the trial court should have exercised its discretion to entertain appellant's claims against the county because they arose out of the same general transaction as appellant's claim against WDC. See *Natpar Corp. v. E. T. Kassinger, Inc.*, 258 Ga. 102, 104 (1) (365 SE2d 442) (1988). In *Natpar*, the trial court had jurisdiction over the nonresident defendant as a joint obligor of the resident defendant and venue was proper as to the plaintiff's claim against the resident and nonresident defendants based on their joint obligation. However, the plaintiff brought a second claim for injunctive relief against the nonresident defendant only. Although venue as to that second claim would normally have been improper, the Supreme Court in *Natpar* held that under those circumstances — where the court has jurisdiction over all the parties and is the proper venue for one claim but is not the proper venue for another claim arising from the same transaction — the trial court has the discretion to entertain that second, "pendent" claim if doing so will promote judicial economy, convenience to the litigants and witnesses, and fairness to the parties. Id. at 104. In the instant case, the trial court did not have jurisdiction over appellee as a joint obligor and was not the proper venue with respect to any claim against appellee. Thus, the trial court had no discretion to entertain any additional, pendent claims and properly concluded that it did not have jurisdiction over appellee and that venue was improper.

However, appellant correctly points out that the appropriate course of action for a court presented with a meritorious motion to dismiss for lack of jurisdiction or venue is to treat the motion as one for transfer and to transfer the case pursuant to the Uniform Trans-

fer Rules, 251 Ga. 893-895 (1984). See also Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII; Uniform Superior Court Rule 19.1. We therefore remand this case to the trial court with instructions to transfer it to the Superior Court of DeKalb County for further proceedings consistent with this opinion.

*Judgment reversed and remanded with direction. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 8, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993 ▮▮▮▮▮▮▮▮

*James B. Ritchie*, for appellant.
*Patrick F. Henry, Jr., Albert S. Johnson*, for appellee.
*McReynolds & Welch, Michael Welch, Bryant, Davis & Cowden, Larry S. Bryant, Cynthia L. Weese, Aiken & Ward, Frederic S. Beloin, Gleaton, Scofield, Egan & Jones, M. Michael Egan, Jr., Charles H. Fails, Steven H. Ballard, Leonard E. Smith*, amici curiae.