A95A1839. MERASTAR INSURANCE COMPANY v. WHEAT
et al.
(469 SE2d 882)

BLACKBURN, Judge.

Charlotte K. Wheat filed an action against David Morgan Manior for damages she allegedly sustained when Manior's vehicle struck the rear of her automobile on April 7, 1993. After Wheat served Merastar Insurance Company (Merastar) as her uninsured motorist (UM) carrier, Merastar claimed (upon opposing motions for summary judgment) that the policy it renewed that covered Wheat at the time of the collision does not provide UM benefits because Wheat rejected such coverage, in writing, when she originally applied for the subject insurance policy in 1988.

It is undisputed that Wheat lawfully rejected UM coverage at the time of her initial application for the subject policy; that the original policy was issued by NWNL General Insurance Company (NGIC); that Merastar subsequently assumed liability as the insurance carrier of the subject policy; and that Merastar renewed the subject policy without obtaining a new rejection of UM coverage from Wheat. Wheat contended that she was entitled to obtain UM coverage at the present time, as the renewal of the policy was not by "the same insurer" and therefore a new written rejection of such coverage by the insured was required at the time Merastar renewed the policy.

The trial court granted Wheat's motion for summary judgment and denied Merastar's motion for summary judgment. This appeal followed.

Northwest National Life Insurance Company (NWNL) owned a subsidiary, NGIC. In 1988, NGIC issued an automobile insurance policy to Charlotte K. Wheat, at which time she signed a written rejection of UM coverage. NWNL also owned another subsidiary, Provident General Insurance Company (PGIC). In December 1989, all of NGIC's obligations, liabilities and rights were transferred to the sister company PGIC. PGIC mailed certificates of assumption and reassurance to all of NGIC's policyholders including Wheat. In August 1990, PGIC formally changed its name to Merastar.

The original policy remained in effect following the transfer and was then renewed by Merastar without obtaining a new written rejection of UM coverage as authorized by OCGA § 33-7-11 (a) (3). Upon the transfer of the policy to Merastar, there had been no change in the terms of the policy and no reissuance of the policy, but rather, a continuation of the existing policy. Merastar fully assumed all of NGIC's duties and liabilities under the policy.

Under the above circumstances, the legislature intended that the assuming insurer stand in the place of the original insurer for the purposes of OCGA § 33-7-11 (a) (3), and the trial court erred in holding otherwise.

1. OCGA § 33-7-11 (a) (1) outlines the general rule that "[n]o automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state" unless it makes provision for UM coverage. OCGA § 33-7-11 (a) (3) provides such coverage "shall not be applicable where any insured named in the policy shall reject the minimum coverage in writing." OCGA § 33-7-11 (a) (3) further provides that the required "coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him *by the same insurer*." (Emphasis supplied.)

According to the general rule of OCGA § 33-7-11 (a) (1), no automobile liability policy "shall be issued or delivered" unless it contains UM coverage. The term "issued or delivered" relates to the creation of the contract of insurance and requires an insurer to provide UM coverage at the time a policy of insurance is created. OCGA § 33-7-11 (a) (3) provides an exception to relieve an insurance company from the administrative burden of offering UM coverage at each renewal of a previously issued policy when the insured has already made a written rejection of UM coverage. Once an insured has exercised the option to reject the coverage, the insurer is under no further duty or obligation to offer the coverage, absent a request, for the life of the policy.

When the two Code sections are read together, the statutory scheme is evident, and it contains two primary precepts. First, an insurer must provide UM coverage to the insured upon *creation* of the insurance contract. Second, once an insured rejects UM coverage in writing, the insurer is under no continuing duty to offer UM coverage each time *the same policy is renewed.* Where, as here, there is an assumption of the policy, it is the same policy that is being renewed and no new UM application is required, just as no new original application is required. See *Smith v. Commercial Union Assurance Co.,* 246 Ga. 50, 52 (268 SE2d 632) (1980).

Accordingly, the insurance company who has fully stepped into the shoes of the predecessor insurer and who then renews the policy issued by the original insurer is "the same insurer" for purposes of OCGA § 33-7-11 (a) (3) and may rely on the written rejection of UM coverage obtained at the time of the original application.

To hold otherwise would simply create a potential windfall for insureds who have previously executed a written rejection of the optional UM coverage at the origination of the policy, upon renewal of the policy where there has been an assumption of the policy by another insurer. It would also force the assuming insurer to incur great expense in obtaining new UM coverage rejection forms in the event of a major transfer of policies. No benefit or protection would inure to the insureds under such a requirement as they would have already made their UM coverage choice after having been informed of their options. A negative impact would be felt by the insureds by such a requirement as the additional cost would be passed through to them in the form of increased premiums.

2. Wheat's motion to dismiss Merastar's direct appeal is denied. The trial court's order granting summary judgment in favor of Wheat was directly appealable pursuant to OCGA § 9-11-56 (h).

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I believe the trial court was correct in ruling that the clear and unambiguous language of OCGA § 33-7-11 (a) (3) excuses the absence of a written rejection of uninsured motorist coverage only "where the named insured had rejected the coverage in connection with a *policy* previously issued to him by *the same insurer.*" (Emphasis supplied.) Accordingly, since there is no question that Merastar is not "the same insurer" that issued the original NGIC policy to Wheat in 1988 and since the record clearly shows that Wheat was covered by a Merastar policy (not a "renewal" of Wheat's NGIC policy as conveyed by the majority) at the time of the collision, I would affirm the trial court's

granting Wheat's motion for summary judgment and denying Merastar's motion for summary judgment.

Wheat admitted that she rejected uninsured motorist coverage when she applied for insurance in May 1988, but proved that the coverage she then rejected was offered by NWNL General Insurance Company (NGIC), not Merastar. The new policy Merastar issued Wheat is entitled, "AUTOMOBILE INSURANCE POLICY," and is followed by a logo for Merastar Insurance Company. There is nothing in this policy that states that it is a "renewal" of Wheat's original NGIC policy. Wheat simply received new insurance coverage from Merastar, an insurance company that is not "the same insurer" which gave her the opportunity to accept or reject uninsured motorist coverage in 1988.

" 'In statutory construction, " '(i)t is fundamental that the determining factor is the intent of the legislature and we look first to the words of the statute to determine what that intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was.' (Cit.) In fact, 'where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. (Cit.)' (Cit.)" *Williamson v. Lucas*, 171 Ga. App. 695, 697 (320 SE2d 800) (1984).' *Standard Guaranty Ins. Co. v. Grange Mut. Cas. Co.*, 182 Ga. App. 842, 843 (357 SE2d 295) (1987)." *Indus. Indem. Co. v. Walck*, 192 Ga. App. 754, 756 (386 SE2d 521). Moreover, " 'where possible, "effect is to be given to all the words of a statute." (Cit.)' *Saleem v. Bd. of Trustees &c. of Atlanta*, 180 Ga. App. 790, 791 (2) (351 SE2d 93) (1986)." *J & A Pipeline Co. v. DeKalb County*, 208 Ga. App. 123, 124 (1), 125 (430 SE2d 13). And to this extent, it is firmly established that courts should not interpret a statute so as to render parts of it surplusage or meaningless. *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260).

The language of the statute at issue in the case sub judice is plain and unequivocal. Uninsured motorist "coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him *by the same insurer*." (Emphasis supplied.) OCGA § 33-7-11 (a) (3). The emphasized language does not include renewal coverage issued by insurers who purchase and assume automobile liability policies from other insurers. However, by disregarding well-established rules of statutory construction and reading more into OCGA § 33-7-11 than is provided, I believe the majority usurps the legislative function and alters legislative policy in this state by holding that an "insurance company who has fully stepped into the shoes of [a] predecessor insurer and who then renews [insurance coverage] is 'the same insurer' for purposes of OCGA § 33-7-11 (a) (3). . . ."

Since there is no question that Merastar is not "the same insurer" that issued the insurance policy under which Wheat was given the opportunity to reject, in writing, uninsured motorist coverage in 1988, I believe the Merastar policy (covering Wheat at the time the subject collided) included uninsured motorist benefits by operation of law. See OCGA § 33-7-11 (a) (1). Consequently, I would affirm the trial court's granting Wheat's motion for summary judgment and denying Merastar's motion for summary judgment.

DECIDED MARCH 15, 1996 — 

*Goodman, McGuffey, Aust & Lindsey, William P. Claxton, James B. McClung*, for appellant.

*Coppedge, Goddard & Leman, Warren N. Coppedge, Jr., J. Allen Hammontree, Finn & Hurtt, Michael D. Hurtt*, for appellees.

*Self, Mullins, Robinson & Marchetti, Miller P. Robinson, Deron R. Hicks*, amici curiae.