**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2020**

# In the Court of Appeals of Georgia

A19A2074. HUNTER et al. v. PROGRESSIVE MOUNTAIN INSURANCE COMPANY.

MILLER, Presiding Judge.

Jennifer and Lewis Hunter seek review of the trial court's order granting partial summary judgment in favor of Progressive Mountain Insurance Company ("Progressive"). This appeal concerns the coverage available under an insurance policy which the Hunters had obtained with Progressive after Jennifer Hunter was involved in a car accident. The Hunters argue that, when they requested an increase in the standard auto liability limits of their policy in September 2012, Progressive was obligated to offer an increase of the limits of their uninsured/underinsured motorist ("UM") coverage to the statutory minimum coverage level as well. Because we conclude that Progressive did not have a statutory duty to obtain a new rejection of

the statutory minimum UM coverage based on the September 2012 change in standard automotive coverage, Progressive also did not have a statutory duty to re-offer the Hunters the statutory minimum UM coverage at that time. We therefore affirm.

> [S]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In addition, a de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Roberson v. Leone*, 315 Ga. App. 459, 460 (726 SE2d 565) (2012).

So viewed, the record shows that the Hunters obtained an automobile insurance policy with Progressive in 2010. The initial standard coverage limits of the policy for bodily injury were $50,000 per person and $100,000 per accident, and the UM coverage for bodily injury was $25,000 per person and $50,000 per accident. The Hunters continuously renewed this policy for every relevant policy period.[1] In

---

[1] From the insurance documents available in the record, it appears that the Hunters' policy renewed every six months in April and October.

September 2012, the Hunters elected to increase their standard coverage limits to $100,000 per person and $300,000 per accident, effective immediately. At that time, Progressive did not offer the Hunters an increase in UM coverage to correspond with their new level of standard automobile coverage, and the Hunters did not request an increase in UM coverage.

On February 16, 2015, Jennifer Hunter was involved in an automobile accident and suffered multiple personal injuries. The other driver admitted fault and settled with Hunter for $100,000, the limit of the other driver's insurance policy. Because the other driver's insurance did not cover the entire amount of Jennifer Hunter's claimed medical bills and Lewis Hunter's claim of loss of consortium, the Hunters filed the instant action against Progressive, seeking to recover the remaining balance as UM benefits. Progressive moved for summary judgment on various grounds.

The trial court partially granted Progressive's motion for summary judgment. Among other things, the trial court concluded that Progressive was not required to offer a choice for a new UM coverage level when the Hunters requested a higher level of standard liability coverage in September 2012. However, the trial court also concluded that a jury issue existed as to whether Lewis Hunter actually signed the

initial UM selection form and waived the statutory default coverage. The Hunters then filed the instant appeal.

The Hunters' sole enumeration of error is that the trial court erred in determining that Progressive was not obligated to offer them an increase in their UM coverage when they requested an increase in their standard auto coverage. Because the change in coverage did not trigger Progressive's statutory duty to offer the statutory minimum UM coverage, and because the record is clear that the Hunters did not request an increase in their UM coverage at that time, the trial court's ruling was correct.

Under Georgia law, no automobile liability policy "shall be issued or delivered" unless it contains UM coverage. OCGA § 33-7-11 (a) (1). Unless the insured "affirmatively choose[s]" a lower UM coverage level, UM coverage will be provided at $25,000 per person and $50,000 per accident, or the level of standard automobile liability coverage, whichever is higher. OCGA §§ 33-7-11 (a) (1) (A), (B).

As an initial matter, it is undisputed that the Hunters did not "request" additional UM coverage when they made their request in September 2012 for additional standard automobile coverage. The Hunters instead argue that, because the

increase in their standard coverage happened during a policy period and not "at the end of a policy period," the change in their policy in September 2012 did not constitute a "renewal" that would qualify for the exception in OCGA § 33-7-11 (a) (3). That exception reads that

> The coverage required . . . shall not be applicable where any insured named in the policy shall reject the coverage in writing. . . . The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer.

OCGA § 33-7-11 (a) (3). Georgia law defines a "renewal policy" as the "issuance and delivery by an insurer of a policy superseding *at the end of the policy period* a policy previously issued and delivered by the same insurer and providing no less than the coverage contained in the superseded policy. . ." (Emphasis supplied.) OCGA § 33-24-45 (b) (3) (2019).[2]

Even if the Hunters are correct that the coverage increase in September 2012 did not constitute a "renewal," however, they fail to establish that their request for a

---

[2] This provision previously resided at OCGA § 33-24-45 (b) (2) and has undergone some substantial changes since 2012, the time of the coverage dispute. See OCGA § 33-24-45 (b) (2) (2012). None of these statutory changes would have an impact on our decision today.

change in the amount of standard coverage would nevertheless have triggered Progressive's duty to offer the statutory minimum UM coverage at that time. Section 33-7-11 (a) (1) only mandates that insurers offer or provide the minimum UM coverage be offered or provided when the policy is "issued or delivered." "The term 'issued or delivered' *relates to the creation of the contract of insurance* and requires an insurer to provide UM coverage *at the time a policy of insurance is created*." (Emphasis supplied.) *Merastar Ins. Co. v. Wheat*, 220 Ga. App. 695, 696 (1) (469 SE2d 882) (1996).[3]

Given the policy statements in the record, it is clear that the "contract of insurance" was created in 2010. The record also contains unrefuted testimony that the 2010 policy "had been renewed for every policy period, including the policy period in effect at the time of the accident [in 2015]," which supports the idea that no new policy was created during that time. The fact that the Hunters requested an increase in their standard liability coverage in September 2012 did not create a new policy such that we could say that the policy was again "issued" or "delivered" at that time.

---

[3] Although *Merastar Ins. Co.* interpreted an older version of OCGA § 33-7-11, the material provisions of the statute for the purposes of this case are the same. See generally *Tice v. American Employers' Ins. Co.*, 275 Ga. App. 125, 126-128 (619 SE2d 797) (2005) (describing the differences between the pre-2001 and post-2001 versions of the statute).

6

See *Roberson*, 315 Ga. App. at 462-463 (a new policy number, changes in the premium amounts, or changes in the number of vehicles insured do not create a "new policy"). There is nothing in the statute requiring Progressive to re-offer the statutory minimum UM coverage based on a change to an already existing policy when the Hunters did not make any request to change their UM coverage at that time. Thus, because Progressive's duty to offer or provide the minimum UM coverage under OCGA § 33-7-11 (a) (1) was not triggered in September 2012, the Hunters' 2010 UM coverage election (assuming the eventual factfinder concludes that such an election was made) would still apply after 2012.

The Hunters rely on our decision in *GEICO v. Morgan*, 341 Ga. App. 396, 400 (1) (a) (800 SE2d 612) (2017) for the proposition that the default UM coverage mandate in OCGA § 33-7-11 (a) (1) is not a "one-time option" that only applies at the creation of a policy. While this is true, *Morgan* also does not stand for the proposition that the mandate reapplies every time there is a tweak to the policy, whether related to UM coverage or not. Our decision in *Morgan* instead made clear that the statutory provision "applies *whenever the insured obtains UM coverage*, whether that occurs when the insured first buys the policy or when the insured requests UM coverage at some later date." (Emphasis supplied.) Id. The change in the amount of standard

7

automobile coverage in September 2012 at issue here, by contrast, had no effect on the Hunters' UM coverage. Because the change in policy coverage did not create a "new policy," and the same policy was in place before and after the change, Progressive's duty to offer an increase in UM coverage was not triggered in September 2012. See *Merastar Ins. Co.*, supra, 220 Ga. App. at 696 (1) ("Once an insured has exercised the option to reject the coverage, *the insurer is under no further duty or obligation to offer the coverage . . . for the life of the policy.*"). A change in the existing policy during the course of one of the policy periods that had no impact on the insureds' UM coverage is not sufficient to trigger the duty to offer the statutory minimum coverage in OCGA § 33-7-11 (a) (1) or to reobtain a rejection of that coverage under OCGA § 33-7-11 (a) (3).

We recognize that in many instances an insured's UM coverage is either set at the level of standard automobile coverage or is set at a certain percentage or multiple of that number. See, e.g., OCGA § 33-7-11 (a) (1) (B) (setting the statutory minimum UM coverage at the level of standard liability coverage). Our decision today rests on the assumed fact that the Hunters had already elected to decouple the amount of UM coverage from the amount of standard liability coverage, thereby unlinking the two amounts, and so we cannot say that the Hunters' request here to increase their

8

standard liability coverage would have had any impact on their UM coverage. There may very well be a different result in a case where the amount of standard coverage and the amount of UM coverage are still linked in some way at the time an insured requests an increase in either coverage.

While Progressive perhaps should have offered the Hunters an increase in UM coverage when they also requested an increase in standard automobile coverage as a matter of good business policy, we cannot find any statutory duty that would have required them to do so. Accordingly, we affirm the trial court's entry of a partial summary judgment.

*Judgment affirmed. Rickman and Reese, JJ., concur.*